11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Brian Christian Abram

Appellant

Vs.                   No. 11-02-00368-CR B Appeal from Dallas County

State of Texas

Appellee

 

A jury convicted appellant, Brian Christian Abram,
of capital murder.  The trial court
assessed the required punishment of confinement for life.  In his first two points of error, appellant
argues that there was legally and factually insufficient evidence to prove that
he intentionally killed Johnny Barrett, Sr. 
In his third and fourth points of error, appellant argues that there was
legally and factually insufficient evidence to prove that appellant robbed or
attempted to rob Johnny Barrett, Sr.  In
his fifth point of error, appellant argues that the trial court erred in
instructing the jury on the law of conspiracy. 
In his sixth point of error, appellant argues ineffective assistance of
counsel.  We affirm.

                                                                Background
Facts

Barrett and his wife, Fannie Barrett, lived with
their two sons, Johnny Barrett, Jr. (Junior) and Jacoby Barrett, in a Dallas
apartment.  After losing his job because
of a back injury, Barrett began to sell marihuana.  One of his customers was Torey
Pirtle, a friend of Junior=s. 
Junior, unemployed, had recently moved in with his parents and sold
crack cocaine. 

On the evening in question, Barrett was watching
television in the living room; Fannie and Jacoby were asleep in the master
bedroom.  Junior was asleep in the other
bedroom.  Pirtle
knocked on the door and asked to see Junior. 
Junior agreed to go with Pirtle, and the two
of them left the apartment.  Pirtle wanted Junior to show him where a Awet house@
was located because Pirtle wanted to purchase some
liquid PCP (phencyclidine).  Appellant,
Corey Williams (Pirtle=s
cousin), and another man were waiting in Pirtle=s car, a burgundy Caprice.  Junior knew Williams and had seen appellant
and the other man Aaround.@ 








Junior testified that, as they reached the car, Pirtle said that he had left his cocaine wrapped in a
dollar bill back in the Barrett apartment and asked Junior if Junior had his
apartment keys.  Junior did have his
keys, and the two of them went back to the apartment; however, they did not
find the cocaine.  When Pirtle and Junior returned to the car, appellant said that
he found the wrapped cocaine in the car. 
Junior recalled that appellant and Williams, who were sitting in the
back seat, did not move over for him; instead, one of them got out, and Junior
sat between the two of them.  Pirtle sat in the front passenger seat.

They smoked marihuana on the way to the Awet house.@  After purchasing two bottles of PCP, everyone
but the driver smoked PCP soaked cigars. Junior testified that the PCP made Pirtle and Williams Ahyper
and jumpy,@ that he
hallucinated, and that his reactions slowed down.  Junior recalled that the PCP did not make
appellant hyper.

When they returned to Junior=s apartment complex, Pirtle asked Junior for the gate code.  Pirtle got out of
the car and punched in the code.  When Pirtle got back in the car, he pointed a revolver at Junior=s
head and said:  AYou
know what time it is?@  Pirtle
demanded:  AWhere
is the stuff?@  Junior said that he knew then that they were
trying to rob him.  Appellant and
Williams tried to hold Junior as he struggled. 
Pirtle hit Junior in the head with the
gun.  Williams then held a butcher knife
at Junior=s
throat while appellant and Pirtle got out of the car
and went to the Barrett=s
apartment.








Fannie testified that she woke up to go to the
bathroom.  As she started toward the
bathroom, appellant grabbed her around the neck and put a gun to her head.  Appellant then pushed her into the living
room and made her sit on a sofa.  Fannie
testified that Pirtle was pointing a revolver at her
husband and that appellant was pointing an automatic pistol at her.  Pirtle asked
Barrett:  AWhere
is the stuff?@  Barrett told Pirtle
that Pirtle had everything that he had.  Pirtle then went
into the bedroom three times, staying there about three minutes each time.  Fannie recalled that Pirtle
brought out a cigar box the first time and her purse the second time.  Although she did not remember seeing Pirtle hand the cigar box to appellant, she noticed that
appellant had the box in his hand when Pirtle went to
the bedroom the third time.  Barrett
followed Pirtle into the bedroom the third time.  It was then that Fannie heard shots from the
bedroom.  Fannie ran out the patio door,
and Pirtle ran after her.  Pirtle tried to
drag Fannie to the car but was unsuccessful. 
Junior said that he heard his mother scream, but that his reactions were
still too slow for him to break away and help her.  Williams still held a knife to Junior=s
throat and told Junior that he was going to die.  When Pirtle could
not get Fannie into the car appellant and Pirtle got
back into the car, and the four men took Junior to Pirtle=s apartment.

As they arrived at Pirtle=s apartment, Junior broke away and ran
to his cousin=s house
across the road.  Junior called his aunt
who told him that his mother had been taken by the police and that he needed to
go to the police station.  At the
station, Junior gave the detectives a seven-page statement that was later
introduced into evidence.  Junior
identified Pirtle as one of the men and referred to
Williams by his nickname ACarmichael.@

Both Fannie and Junior testified that Barrett kept
money, jewelry, and marihuana in various cigar boxes.  The police found one cigar box near the front
door where appellant was standing when Fannie ran out of the patio door.  Appellant=s
fingerprint was on that cigar box. 
Fannie identified the cigar box as being the one normally kept on the
dresser in the bedroom that held jewelry and marihuana.  She testified that Barrett=s ring was missing from the box.  She also testified that she last saw Pirtle with her purse and that it had not been
recovered.  Fannie identified another
cigar box that the police found near the love seat in the living room; it
contained cash and marihuana.  In the
parking lot where Fannie told the police that she had struggled with Pirtle, the police found Pirtle=s palm print on the window of a Hyundai
Elantra. 
Fannie also testified that the men were in a red Caprice.

The murder occurred during the early morning
hours; and, that same day, the police arrested Pirtle
and Williams.  They found the butcher
knife in Williams=s
Oldsmobile which was located outside of Pirtle=s apartment.  The police found a gun inside Pirtle=s
apartment under a mattress; however, the record does not show that it was the
revolver used by Pirtle.  The police found a left Nike tennis shoe in
the burgundy Caprice and a Nike tennis shoe in the Barrett apartment.  Fannie and Junior separately identified
appellant in a six-photo lineup, and the police arrested appellant the day
after the murder.








The medical examiner testified that Barrett was
shot six times with a .38 caliber weapon. Four of the shots were in his
face.  The remaining two wounds suggested
that Barrett was in a defensive posture when he was shot.  There was testimony that a .38 caliber weapon
is usually a revolver.  The police did
not find any shell casings in the bedroom, and that also is consistent with the
weapon being a revolver.

The jury charge instructed the jury on the law of
parties; instructions on conspiracy were included.  The charge also instructed the jury that,
unless it found from the evidence beyond a reasonable doubt that at the time of
the offense Pirtle had the specific intent to cause
the death of Barrett, it could not convict appellant of capital murder.  The jury found appellant guilty of capital murder.

                                            Legal
and Factual Sufficiency of the Evidence

To determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664
(Tex.Cr.App.2000).  To determine
if the evidence is factually sufficient, we must review all of the evidence in
a neutral light and determine whether the evidence supporting guilt is so weak
as to render the conviction clearly wrong and manifestly unjust or whether the
evidence supporting guilt, although adequate when taken alone, is so greatly
outweighed by the overwhelming weight of contrary evidence as to render the
conviction clearly wrong and manifestly unjust. 
Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Cain
v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis
v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).  We review the fact finder=s weighing of the evidence and cannot
substitute our judgment for that of the fact finder.  Cain v. State, supra;
Clewis v. State, supra.  Due deference must be given to the jury=s determination, particularly
concerning the weight and credibility of the evidence.  Johnson v. State, 23
S.W.3d 1 (Tex.Cr.App.2000); Jones v. State, 944 S.W.2d 642
(Tex.Cr.App.1996), cert. den=d,
522 U.S. 832 (1997).  This court
has the authority to disagree with the fact finder=s
determination Aonly when
the record clearly indicates such a step is necessary to arrest the occurrence
of a manifest injustice.@  Johnson v. State, supra at 9.








Capital murder is committed if a person
intentionally or knowingly causes the death of an individual during the course
of committing a robbery.  TEX. PENAL CODE
ANN. ' 19.03(a)(2) (Vernon Supp. 2004). 
In his first four points, appellant argues that the evidence was legally
and factually insufficient to show that he intentionally or knowingly caused
the death of Barrett or that he robbed or attempted to rob Barrett.

Under the law of parties, a person may be found
guilty of capital murder if the offense was committed by his own conduct, by
the conduct of another for which he was criminally responsible, or by both.
TEX. PENAL CODE ANN. '
7.01(a) (Vernon 2003).  TEX. PENAL
CODE ANN. ' 7.02
(Vernon 2003) provides in part:

(a) A person is criminally responsible for an
offense committed by the conduct of another if:

 

(2) acting with intent to
promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense.

 

(b) If, in the attempt to carry out a conspiracy
to commit one felony, another felony is committed by one of the conspirators,
all conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
the carrying out of the conspiracy.

 








The evidence was legally and factually sufficient
under Section 7.02(a)(2) & (b).  For appellant to be guilty of capital murder
as a party under Section 7.02(a)(2), the jury had to
find from sufficient evidence that appellant aided or encouraged Pirtle in committing the offense of capital murder, not
just the robbery.  Duke v. State,
950 S.W.2d 424 (Tex.App. B
Houston [1st Dist.] 1997, pet=n
ref=d).  The trial court so instructed and charged the
jury.  Fannie=s
testimony and Junior=s
testimony was replete with examples of how appellant aided Pirtle
in robbing Barrett and of how appellant aided Pirtle
in murdering Barrett.  Fannie saw
appellant holding the cigar box with jewelry and marihuana; the police found
appellant=s
fingerprint on that box.  By guarding
Fannie in the living room, appellant aided Pirtle in
taking the life of Barrett.  Both Pirtle and appellant were using their guns during the
robbery, and appellant should have anticipated the murder.  A jury may infer the intent to kill from the
use of a deadly weapon unless it would not be reasonable to infer that death or
serious bodily injury could result from the use of the weapon.  Jones v. State, supra
at 647; Ross v. State, 861 S.W.2d 870, 873 (Tex.Cr.App.1992).  The jury could have inferred from the
evidence that appellant had the requisite intent to kill.  The fact that Pirtle
shot Barrett six times demonstrates that he intentionally and knowingly
murdered Barrett.  Under Section 7.02(a)(2), appellant was criminally responsible for the offense
of capital murder committed by Pirtle.  As we will discuss in the next section, the
evidence was also legally and factually sufficient to convict appellant as a
party under Section 7.02(b).  We overrule
appellant=s first
four points.

                                             The
Instruction On Conspiracy Was Correct

The trial court did not err in including an
instruction on conspiracy in the jury charge. The court was merely giving an
alternative Aparties@ charge as provided in Section
7.02(b).  Montoya v.
State, 810 S.W.2d 160, 165 (Tex.Cr.App.1989), cert. den=d, 502 U.S. 961 (1991).  Under Section 7.02(b), if the evidence shows
that there was a conspiracy to commit the felony of robbery, that the felony of
capital murder was committed by one of the conspirators in furtherance of the
robbery, and that the murder should have been anticipated as a result of
carrying out the conspiracy to commit robbery, then all conspirators are guilty
of capital murder, though an individual conspirator may have had no intention
to commit it.








To determine whether a defendant participated in
an offense as a party, we may examine the events occurring before, during, and
after the commission of the offense; and we may rely on actions of the
defendant that show an understanding and common design to commit the
offense.  Ransom v.
State, 920 S.W.2d 288, 302 (Tex.Cr.App.1994).  Circumstantial evidence alone may show that
one is a party to the offense.  Wygal
v. State, 555 S.W.2d 465, 468-69 (Tex.Cr.App.1977).   Here, the evidence was sufficient for the
jury to infer that the four men had planned the robbery before picking Junior
up to go to the Awet
house.@  Pirtle made certain
that Junior had keys to the Barrett apartment before they drove to the Awet house.@  Neither appellant nor Williams moved over
when Junior got into the back seat of Pirtle=s car; instead, they placed Junior
between them.  Williams conveniently had
a butcher knife which was used to keep Junior in the car.  Although three of the men smoked the
PCP-laced cigars with Junior, the jury could have reasonably inferred that the
three conspirators limited their intake of the drug.  Junior remembered that appellant did not
become hyper or rowdy from the PCP. 
Junior=s and
Fannie=s
testimony described Pirtle, Williams, and appellant
as being in control of their actions. 
The evidence was factually and legally sufficient to show that the three
men conspired to commit the robbery, that Pirtle committed the murder of Barrett in furtherance of
the robbery, and that appellant should have anticipated the murder.  We overrule appellant=s
fifth point of error.  

                                                Ineffective
Assistance of Counsel Claim

In his sixth and final point, appellant argues
that he received ineffective assistance of counsel because his trial counsel
failed to object to the admission of testimony regarding his post-arrest
silence.  Detective Rick Berry, a witness
for the State, testified that he arrested appellant and read appellant his Miranda
warnings.[1]  Detective Berry testified that appellant
spoke with him for approximately one hour. 
The prosecutor then asked the following questions:

Q:  And
without going into what was said, did you then ask him whether he would put it
into a written statement?

 

A:  I did,
yes.

 

Q:  Did he
begin to put it into a written statement?

 

A:  He did,
yes.

 

Q:  Then
what happened?

 

A:  At that
point, he asked if he had to give me a written statement and I said, no, he did
not have to give me a written statement. 


 

He asked me could he have a lawyer present while
he gave me B if he
gave me a statement.  I said, it was his
option to have a lawyer, if he so desired. 
And he said that he would prefer to have a lawyer with him, if he gave
any kind of written statement.

 

Q.  So what
did you do at that point?

 

A.  At that
point, I ended the interview.  

 








To prevail on a claim of ineffective assistance of
counsel, an appellant must establish that his counsel=s
performance fell below an objective standard of reasonableness and that there
is a Areasonable
probability@ that the
result of the proceeding would have been
different but for counsel=s
deficient performance.  Strickland v.
Washington, 466 U.S. 668 (1984); see Mallett
v. State, 65 S.W.3d 59, 62-63 (Tex.Cr.App.2001).  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Hernandez v. State,
726 S.W.2d 53, 55 (Tex.Cr.App.1986). The purpose of this two-pronged
test is to determine whether counsel=s
conduct so compromised the proper functioning of the adversarial process that
the trial cannot be said to have produced a reliable result.  Thompson v. State, 9 S.W.3d 808,
812-13 (Tex.Cr.App.1999)(citing McFarland v. State,
845 S.W.2d 824, 843 (Tex.Cr.App.1992), cert. den=d, 508 U.S. 963 (1993)).

Our review of trial counsel=s
representation is highly deferential and presumes that counsel=s actions fell within a wide range of
reasonable professional assistance.  Tong v. State, 25 S.W.3d 707, 712 (Tex.Cr.App.2000), cert.
den=d,
532 U.S. 1053 (2001).  When the
record is silent on the motivations underlying counsel=s
tactical decisions, appellant cannot usually overcome the strong presumption
that counsel=s conduct
was reasonable.  See Thompson
v. State, supra at 813.  In
order to defeat the Strickland presumption of reasonable professional
assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@ 
Thompson v. State, supra at 814 (quoting McFarland v.
State, 928 S.W.2d 482, 500 (Tex.Cr.App.1996), cert. den=d, 519 U.S. 1119 (1997)).  In the majority of cases, the record on
direct appeal is undeveloped and cannot adequately reflect the motives behind
trial counsel=s
actions.  Thompson v. State, supra
at 813-14.

In the present case, the record is silent as to
why appellant=s trial counsel
chose not to object to the prosecutor=s
questions to Detective Berry.  His trial
counsel may have wished to minimize any effect of the testimony on the
jury.  The prosecutor did not refer to
the testimony.  The record is
insufficient to overcome the strong presumption that counsel=s conduct was reasonable.   Moreover, appellant has also not met the
second Strickland test.  He has
not shown a reasonable probability that the result of the proceeding would have
been different even if his counsel had objected to the testimony.  As related earlier, the evidence of appellant=s guilt was extensive.  We overrule appellant=s
final point.

                                                                This
Court=s Ruling

The judgment of the trial court is affirmed.

 

January 8, 2004                                                            TERRY
McCALL

Do not
publish.  See TEX.R.APP.P. 47.2(b).                JUSTICE

Panel
consists of:  Arnot,
C.J., and 

Wright,
J., and  McCall,
J.











[1]Miranda v. Arizona, 384 U.S. 436 (1966).