James Michael DUKE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–96–00521–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 24, 1997.

Robert Morrow, Spring, for Appellant.

John B. Holmes, Kimberly Aperauch Stelter, Houston, for Appellee.

Before TAFT, COHEN and O'CONNOR, JJ.

## OPINION

TAFT, Justice.

A jury found appellant, James Michael Duke, guilty of capital murder. The State did not seek the death penalty, so the trial court automatically assessed life imprisonment. We address whether the trial court reversibly erred by charging the jury that appellant could be found guilty of capital murder if he intended to aid in "the offense," where "the offense" was erroneously identified as robbery, instead of capital murder, in an obverse instruction. We also define the term "obverse instruction" and discourage the use of obverse instructions. We affirm.

## Facts

Appellant and his brother, Curtis Duke, together with Ryan Spillane, Eddie Capetillo and Mike Wilson, needed several hundred dollars to buy marijuana. They decided to rob Matthew Vickers because they had heard he was a drug dealer and had lots of money. They drove to Vickers' neighborhood in separate cars, and Mike entered Vickers' house. Mike talked to Matthew Vickers and Grant Barnett; he found out there were two girls upstairs. Mike left and the group of five reassembled and returned to Vickers' house in a car appellant had stolen earlier that week. The group discussed shooting all of the victims "if it was necessary."

Appellant, Eddie, Curtis and Ryan went into the house, while Mike stayed in the car. Appellant was wearing a ski mask and had a .38 caliber snub nose pistol. Eddie had a .22 caliber pump rifle. Allison Vickers, Matthew's sister, was able to escape when Eddie and Curtis went upstairs to get the girls. Grant Barnett, Matthew Vickers, and Kimberly Williamson were trapped in the house. Appellant and Eddie held them at gunpoint and demanded all their money. When appellant fired the first shots, all three victims started to run. A rapid succession of gunfire

followed from both guns. Grant fell to the ground and pretended to be dead. Matthew had fallen near him. Appellant stood over the two and fired his gun until it ran out of bullets; appellant continued pulling the trigger, but the gun only clicked. In the background, Grant could hear somebody yelling, "get that bitch," referring to Kimberly who was trying to escape. Eddie ran after and shot her, while appellant and the others left the house.

After the shooting, Mike asked what had happened. Eddie said he shot the girl and one of the guys but did not know if they were dead. Appellant said he knew one of the guys was dead because he had shot him in the head, but he did not know if the other guy was dead. When asked why he shot, appellant said when he heard Eddie say one of the girls ran out of the house "something just clicked in his head and he started firing."

Grant underwent extensive surgery for a collapsed lung and wounds to his chest, arm and back. Matthew and Kimberly died at the house from three gunshot wounds each. One of the fatal shots to Matthew came from the .38 caliber snub nose appellant used. Police arrested appellant three days later at his apartment. During the arrest, police recovered a ski mask from an open desk drawer in appellant's bedroom. Appellant later gave a statement in which he admitted participating in the robbery and shooting at one of the victims.

The State indicted appellant with capital murder in two paragraphs. The first paragraph alleged appellant, during the same criminal transaction, intentionally and knowingly caused the death of Matthew Vickers and Kimberly Williamson by shooting them with a deadly weapon. The second paragraph alleged appellant, while in the course of committing the robbery of Matthew Vickers, intentionally caused the death of Matthew Vickers. The jury found appellant guilty of capital murder as charged in the indictment.

## Obverse Jury Instruction

In appellant's sole point of error, he contends the trial court reversibly erred by

charging the jury it could find appellant guilty of capital murder as a party if he intended to aid in the commission of robbery, rather than the commission of capital murder.

## A. Standard of Review

Jury charge error is generally examined under the standards of *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984). An erroneous jury charge does not result in automatic reversal of a conviction. TEX.CODE CRIM. P. ANN. art. 36.19 (Vernon 1981); *Almanza*, 686 S.W.2d at 171. When reviewing charge error, we determine: (1) whether error actually exists in the charge; and (2) whether any resulting harm requires reversal. *See Almanza*, 686 S.W.2d at 171. Appellant did not object to the complained of error in the jury charge. Therefore, appellant must show the error is so egregious and created such harm that appellant has not had a fair and impartial trial. *Id.* The actual degree of harm must be reviewed in light of the charge as a whole, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.*

Appellant argues the error is not subject to *Almanza* harm analysis because it is an "absolute rule violation requiring no harm analysis." Appellant relies on *Reyes v. State*, 938 S.W.2d 718 (Tex.Crim.App.1996). *Reyes* held that the absence of a reasonable doubt instruction is a violation of an absolute rule which cannot be waived or forfeited, even if the charge was not requested. *Id.* at 721; *see Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim.App.1991). Appellant contends the charge allowed the jury to convict him of capital murder without requiring the jury to find he had the specific intent to aid in the murder. He claims this reduced the State's burden of proof and constitutes an absolute rule violation. In our view, appellant is not complaining about the absence of an instruction required by law which cannot be waived, however, but an instruction which was misleading or misstated the law. Therefore, this case does not fit the rationale of *Reyes*, and

we will review it under the standard set forth in *Almanza*.

## B. Charge Error

Appellant claims the error occurred in one of several application paragraphs. The State disagrees, stating it was in a preapplication paragraph. We have already identified the paragraph in question as an obverse instruction. While no case appears to have articulated the distinction, we see a difference between an application paragraph and an obverse instruction.

**1. Application paragraph.** "The application paragraph of a jury charge is that which authorizes conviction." *McFarland v. State*, 928 S.W.2d 482, 515 (Tex.Crim.App. 1996). In other words, it tells the jury under what circumstances it can find the accused guilty. As in this case, an application paragraph generally: (1) begins with "Now, if you find from the evidence beyond a reasonable doubt that . . . ."; (2) contains the elements alleged in the indictment; and (3) ends with "then you will find the defendant guilty of [the alleged offense]." The application paragraph in this case had four alternatives: (1) guilty as the shooter of both victims; (2) guilty as a party to the shooting of both victims by Eddie Capetillo; (3) guilty as the shooter of Matthew Vickers in the course of robbery; and (4) guilty as a party to the shooting of Matthew Vickers by Eddie Capetillo. The last alternative was:

> If you find from the evidence beyond a reasonable doubt that on or about the 16th day of January, 1995, in Harris County, Texas, Eddie Capetillo did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Matthew Vickers, intentionally cause the death of Matthew Vickers by shooting Matthew Vickers with a deadly weapon, namely, a firearm, and that the defendant, James Michael Duke, with the intent to promote or assist the commission of *the offense,* if any, solicited, encouraged, directed, aided or attempted to aid Eddie Capetillo to commit *the offense,* if he did,

then you will find the defendant guilty of capital murder.

(Emphasis added.)

█ **2. Obverse instruction.** The error at issue here occurred in an instruction that came after the definitions, but prior to the application paragraph. The erroneous instruction was part of a four-part instruction that required the jury to find certain elements before being warranted in convicting appellant of capital murder. In other words, it told the jury some of the circumstances without which it could not find the accused guilty. Such an instruction is obverse to the application paragraph in that certain elements are presented in an opposite, mirror-like, sense. The obverse instruction was not the paragraph used for convicting appellant because it did not include appellant's name, the date of the offense, the location of the offense, intentional killing, or use of a deadly weapon. The jury charge in this case would not have been affected if the obverse instructions had been omitted entirely because obverse instructions are superfluous.[1] They are very similar to defensive theories that merely negate an element of the offense which have long been held unnecessary. *See Sanders v. State,* 707 S.W.2d 78, 81 (Tex. Crim.App.1986). Indeed, by emphasizing only certain elements of the offense, obverse instructions indirectly comment on the weight of the evidence supporting the emphasized elements. This is contrary to article 36.14 of the Code of Criminal Procedure (Vernon 1997), which prohibits such comments.

█ **3. The error.** The obverse instruction at issue here corresponded with the fourth portion of the application paragraph. It related to guilt as a party to the robbery-murder of Matthew Vickers. With the pertinent portion highlighted, it stated:

> Before you would be warranted in convicting the defendant, James Michael Duke, of capital murder ... [y]ou must find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, with the intent to promote or assist the commission of the offense of ***robbery*** of Matthew Vickers, if any, solicited, encouraged, directed, aided, or attempted to aid Eddie Capetillo in shooting Matthew Vickers, if he did.

Appellant correctly points out that the italicized word, "robbery," should have been "capital murder."

Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994). Appellant correctly cites *Webb v. State* as an example of a proper application of the law of parties in a capital murder case, emphasizing that the offense of which the defendant must be acting with intent to promote or assist the commission is capital murder, not robbery. 760 S.W.2d 263, 266 n. 7 (Tex.Crim.App.1988). While *Webb* involves an application paragraph, specification of the offense intended applies with equal force to an obverse paragraph.

Focusing on the application paragraph, the State argues use of "with the intent to promote or assist the commission of *the offense*" was not erroneous. In most cases, *i.e.,* those involving only one offense, we would agree with the State. However, the offense in question here is actually a combination of two offenses, murder and robbery. Under these circumstances, "the offense" in the application paragraph is ambiguous. We cannot overlook the danger a jury might seek clarification by referring to the obverse instruction which erroneously applied the specific intent of the law of parties to robbery, instead of capital murder, as the offense. Accordingly, we agree with appellant that the obverse

---

1. This is not to say obverse instructions may not be fatally defective. *See Arceneaux v. State,* 803 S.W.2d 267, 268–72 (Tex.Crim.App.1990) (reversing and acquitting because of an obverse instruction requiring the jury to find that the exhibit introduced in evidence by the State was cocaine when no such exhibit had been introduced because the cocaine had been used up during chemical testing). A trial court that submits obverse instructions unnecessarily risks reversal.

instruction rendered the jury charge erroneous.

## C. Harm Analysis

When we find error, and appellant did not object to the error in the trial court, we must then examine relevant portions of the *entire record* to determine if appellant suffered *egregious* harm. *Almanza,* 686 S.W.2d at 171. The actual degree of harm must be reviewed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.* The burden is on appellant to show he has suffered actual, rather than theoretical, harm. *See Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994).

■ **1. Nature of the error.** As we have already observed, the error lay in instructing the jury, in regard to appellant's guilt as a party to the murder-robbery of Matthew Vickers, that appellant need only have had intent to promote and assist the commission of robbery, rather than capital murder. The obvious danger is that the jury might have found appellant guilty as a party to the murder-robbery of Vickers without finding beyond a reasonable doubt that appellant intended to promote and assist the commission of the murder, as well as the robbery. As appellant argues, this would have impermissibly diminished the State's burden of proof.

**2. Jury charge as a whole.** The charge began by stating appellant stood charged by indictment with the offense of capital murder. The definition portion of the charge stated a person commits murder if he intentionally or knowingly causes the death of an individual. The charge stated a person commits capital murder by intentionally committing murder in the course of committing or attempting to commit robbery. The charge defined "intentional," relative to the offense of capital murder, as "a person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result." The definition portion of the charge also defined robbery, aggravated robbery, and theft. The charge also provided an abstract definition of the law of parties, "A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."

The charge then gave a four-part obverse instruction requiring the jury to find certain elements under each of four theories, disjunctively, before being warranted in finding appellant guilty of capital murder. The four theories were guilt under the first paragraph of the indictment (murdering two persons in the same transaction) as the primary actor or as a party, and guilt under the second paragraph (murder of Matthew Vickers while robbing him) as the primary actor or as a party. It was in the fourth part of the obverse instruction that the error occurred. The application paragraph for capital murder came next. It authorized the jury to find appellant guilty of capital murder if it found beyond a reasonable doubt each of the elements of any of the four theories presented. The charge went on to instruct on the lesser offenses of felony murder and aggravated robbery. The remainder of the jury charge does not impact on the error.

Looking at the charge as a whole, it is difficult to see how the jury could have been misled by the erroneous obverse charge to think of "the offense" as robbery rather than capital murder. Capital murder is "the offense" in issue throughout the jury charge until one reaches instructions on the lesser included offenses.

**3. The evidence.** The evidence consisted primarily of appellant's confession, the testimony of Grant Barnett, the testimony of accomplice Ryan Spillane, as well as ballistics and autopsy evidence. This overwhelming evidence showed that appellant shot Grant Barnett, who survived, and Matthew Vickers, who did not, but that only Eddie Capetillo shot Kimberly Williamson, the other decedent. The overwhelming evidence also showed that the murders were committed in the course of robbery of Matthew Vickers. The evidence did show, however, that of the

three fatal wounds to Matthew, only one was made by a .38 caliber round, while the other two were made by .22 caliber rounds. Eddie Capetillo fired the .22 caliber rifle. Thus, this evidence could have given rise to appellant's guilt as a party to the murder-robbery of Matthew Vickers.

**4. Argument of counsel.** The prosecutor opened her argument by explaining the jury charge. She skipped the obverse instruction entirely, however. To explain the four ways the jury could find appellant guilty of capital murder, she referred to the application paragraph. After covering the first three ways, she said:

> the fourth way to find the defendant guilty of capital murder is if you believe Eddie Capetillo intentionally caused the death of Matthew Vickers during the robbery of Matthew and that this defendant, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided or attempted to aid Eddie Capetillo *to commit the offense.*

(Emphasis added.) In response, defense counsel argued that the charge required the jury to find appellant "specifically intended to cause the death of Matthew Vickers when he shot him." Defense counsel admitted appellant shot Matthew Vickers, but argued appellant was guilty of felony murder instead of capital murder, because he did not have the specific intent to kill Matthew. Defense counsel emphasized those facts showing appellant had no intent to commit murder, such as his wearing a mask.

The prosecutor's closing argument dwelt on the actions of appellant in shooting Grant Barnett and Matthew Vickers during the course of the robbery. The prosecutor responded to the defense argument by stating it didn't matter what appellant's intent was on the way to Vickers' house. What mattered were appellant's actions when Kimberly started to run and something just clicked and he started shooting. The prosecutor argued appellant's intent was shown by his continuing to shoot at Matthew and Grant, even after his handgun was empty.

It is clear from the arguments of counsel that the only theory of capital murder at issue was appellant's commission of murder, as the primary actor, of Matthew Vickers during the course of robbery. There was no argument about appellant's being responsible for murdering Matthew and Kimberly, either as the primary actor or as a party. Most importantly, there was no argument about appellant's responsibility for murdering Matthew as a party.

**5. Summary.** After considering the nature of the error, the jury charge as a whole, the state of the evidence, and arguments of counsel, we conclude appellant has not shown the slightest possibility of actual harm from the erroneous obverse instruction at issue. Obviously, then, appellant has not met his burden of showing egregious harm. The error pertained only to the law of parties in regard to the murder-robbery of Matthew Vickers, and it is clear from the evidence and arguments of counsel that absolutely no issue was joined over appellant's guilt under the law of parties. Accordingly, we overrule appellant's sole point of error.

### Conclusion

We affirm the trial court's judgment.