

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-08-043-CR

DANIEL BOSS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

Appellant Daniel Boss appeals his conviction for burglary of a habitation. In four issues, he challenges the sufficiency of the evidence, the trial court's indigence finding, remarks by the State during voir dire, and the trial court's

---

[1] *See* Tex. R. App. P. 47.4.

refusal at an abatement hearing to let appellant testify about claims he made in a motion for new trial.  We affirm.

## II. Facts

The garage to David Bonner's home in Carrollton, Denton County, Texas, faces an alley behind his house.  On March 25, 2007, in the early afternoon, the garage door was open, and David was working behind a wooden privacy fence in his backyard when he saw through the slats a woman carrying his golf clubs from the garage into the alley.

David dashed into the alley after her.  He caught up after she had thrown the clubs into the bushes.  David asked her why she had taken his clubs, and after initially denying that she had, she explained that she thought they were hers that had been stolen earlier.

David asked her to return his clubs to the garage, and she was about to but hesitated when David's wife, who had followed David into the alley, announced that she was going to call the police.  The woman declared that she did not want to go to jail and turned around, walking back down the alley.

David followed her as appellant, driving a green Mitsubishi Eclipse, entered the alley and rolled slowly toward them.  David asked appellant if he knew the woman and if he was with her.  Appellant denied knowing her and continued down the alley and onto the adjoining street.  As the car passed by,

2

the Bonners noticed that the backseat was loaded with "electronic components." David followed the woman another several minutes before returning home.

In the meantime, a neighbor had called the police. Carrollton Police Officer Joseph Nault arrived with officer-in-training Francisco Reyes and interviewed the Bonners.

Very shortly thereafter, in the nearby Castle Hills neighborhood of Lewisville, Texas, Jeff Deserrano drove the family SUV into the garage from the alley behind their home after a weekend outing at the lake. His wife and children climbed out and into the family's other car for a trip to the grocery store while Jeff stayed behind to unload the boat and the SUV.

He was going back and forth between the house and garage when he noticed appellant just outside the garage with his back to him. Jeff asked, "What are you doing? Can I help you?" Appellant responded by asking if Jeff had seen a dog and nervously ran around as if looking for a dog. Jeff noticed a green Mitsubishi Eclipse with a woman in the passenger seat parked in the alley behind the house. Suspicious, Jeff memorized the car's license plate and asked appellant for his telephone number in case the dog showed up. Appellant refused, telling Jeff to just hold on to the dog if he found it. He then climbed into the car with the woman and drove away. Jeff called the police and went

3

back into the garage to see if anything was missing. He noticed that his golf clubs had been displaced from the rack where he usually kept them.

Lewisville Police Officer Steve Schaffer responded to a dispatch that described suspicious persons in a green Mitsubishi Eclipse in the Castle Hills neighborhood. As Officer Schaffer headed toward the Deserranos' home, he saw appellant's car approaching in the far left-hand lane on the other side of the divided roadway. As the cars met and passed, Officer Schaffer made a U-turn to get behind the Eclipse. Without signaling, appellant immediately crossed the center lane into the far right-hand lane and turned onto the next street. With the officer in pursuit, appellant accelerated, finally stopping in Carrollton after Officer Schaffer had activated his emergency lights and siren.

Officer Nault was preparing his report after meeting with the Bonners when Lewisville police requested assistance on a stop in Carrollton. The car's description matched the one that the Bonners had given. Officer Nault drove to the site where Lewisville officers had pulled over appellant and Jodie Lynn Miller, a woman matching the description the Bonners had given of the woman who had taken David's clubs.

An officer transported the Bonners from their home to the stop, whereupon they immediately recognized the green Eclipse, appellant, and Miller, despite her having changed her clothes and put up her hair.

4

In the Eclipse, officers found a VCR, a stereo, and a pink shirt and flip flops that Miller had worn while taking David's golf clubs.

Officer Schaffer took digital photographs of appellant, the car, and Miller to the Deserranos' home and showed the photographs to Jeff, who identified appellant as the man he had seen standing outside his garage and Miller as the woman he had seen in the green Eclipse.

Appellant was charged with burglary of a habitation. At trial, the jury was authorized to convict him as a party and returned a verdict of guilty. The State presented punishment evidence of appellant's multiple prior convictions, and the jury assessed punishment at ninety-nine years' confinement. The trial court sentenced appellant accordingly.

### III.  Legal and Factual Sufficiency

Appellant's first issue on appeal challenges the legal and factual sufficiency of the evidence to support the verdict.

### A.  Standards of Review

In reviewing legal sufficiency, we consider all the evidence in the light most favorable to the verdict and determine whether a rational juror, based on the evidence and reasonable inferences supported by the evidence, could have

5

found the essential elements of the crime beyond a reasonable doubt.[2] We defer to the "responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts."[3] The jury is permitted to draw multiple inferences as long as each inference is supported by the evidence presented at trial.[4] Each fact need not point directly and independently to appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.[5] Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to support a conviction.[6] On appeal, the standard of review is the same for both circumstantial and direct evidence cases.[7]

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

[3] *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13.

[4] *Hooper*, 214 S.W.3d at 15.

[5] *Id.* at 13; *see Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), *cert. denied,* 511 U.S. 1046 (1994).

[6] *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

[7] *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[8] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.[9] To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[10]

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by evidence that is legally sufficient, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction."[11] We cannot conclude that a conviction is clearly

---

[8] *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).

[9] *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.

[10] *Watson*, 204 S.W.3d at 417.

[11] *Id*.

wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence.[12] We may not simply substitute our judgment for the factfinder's.[13] Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered."[14] Thus, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[15] Our deference in this regard safeguards the defendant's right to a trial by jury.[16] An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal.[17] Moreover, an opinion reversing and remanding on factual sufficiency grounds

---

[12] *Id*.

[13] *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

[14] *Johnson*, 23 S.W.3d at 8.

[15] *Id*. at 9.

[16] *Lancon*, 253 S.W.3d at 704.

[17] *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

must detail and clearly state why the finding in question is factually insufficient and under which ground.[18]

### B.  Elements of Burglary of a Habitation

A person commits burglary of a habitation when, without the effective consent of the owner, the person enters a habitation with intent to commit theft.[19]  A habitation is a structure adapted for the overnight accommodation of persons and includes each connecting structure.[20]  A garage is a habitation.[21]

### C.  Criminal Responsibility for Burglary of a Habitation as a Party

In proving burglary of a habitation under the law of parties, it is not necessary that the defendant be the one who enters the building.[22]  A person may be convicted of burglary as a party "if, acting with intent to promote or assist the commission of the burglary, he solicits, encourages, directs, aids, or

---

[18] *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 7.

[19] Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003).

[20] *Id.* § 30.01(1)(B).

[21] *Jones v. State*, 532 S.W.2d 596, 599 (Tex. Crim. App. 1976), *overruled on other grounds by Blankenship v. State*, 780 S.W.2d 198, 210 (Tex. Crim. App. 1989); *Johnson v. State*, 690 S.W.2d 318, 320 (Tex. App.—Dallas 1985, pet. ref'd).

[22] *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

attempts to aid" another person to commit the burglary.[23]   The intent to promote or assist in the commission of the offense goes to each element of the offense charged.[24]   We look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act."[25]

### D. Analysis

The record shows that David Bonner saw Miller leaving his garage with his golf clubs. Miller was wearing a pink shirt and pink flip flops. As David was confronting Miller, he and his wife saw appellant drive past them in a green Mitsubishi Eclipse with electronics in the back.

Approximately a half-hour later, Jeff Deserrano saw appellant standing just outside his garage door. Appellant said he was looking for his dog but would not give Jeff any contact information in case the dog showed up. Instead, he told Jeff to hold on to the dog if he found it. Appellant climbed into

---

[23] *See* Tex. Penal Code Ann. § 7.02(a)(2); *Hooper*, 214 S.W.3d at 13; *Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd).

[24] *See Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986); *Duke v. State*, 950 S.W.2d 424, 427 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

[25] *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101 (1986)).

a green Mitsubishi Eclipse and drove away. Jeff subsequently noticed that his golf clubs had been moved from their rack in his garage.

Officer Schaffer stopped a green Mitsubishi Eclipse close by and heading away from Jeff's home that matched the description and license plate number Jeff had provided. Miller was in the passenger seat. Because she matched the Bonners' description of the woman who had taken David's golf clubs, the officers picked up the Bonners and brought them to the stop, whereupon the Bonners immediately recognized Miller, the green Mitsubishi Eclipse, and appellant. Miller had changed her clothes and put her hair up. Inside the car, officers found the pink shirt and flip flops that the Bonners saw Miller wearing when she took David's golf clubs. We hold that the evidence is legally sufficient to support the jury's finding that appellant is guilty as a party of burglary of a habitation because a rational jury could reasonably believe beyond a reasonable doubt that appellant aided or attempted to aid Miller to commit burglary at the Bonners' home by driving the getaway car.[26]

Having found the evidence legally sufficient, we now address appellant's factual insufficiency claim. There is evidence in the record that arguably does not support appellant's participation as a party to the burglary committed by

---

[26] *See* Tex. Penal Code Ann. §§ 7.02(a)(2), 30.02(a)(1); *Hooper*, 214 S.W.3d at 13; *Frank*, 183 S.W.3d at 72.

11

Miller. Appellant told Jeff he was looking for his lost dog; Miller told Jeff that his dog's barking would attract their dog; appellant told officers that they had gone out to clean the car, became lost, and that their dog had run away when they switched drivers; Miller told Officer Nault that she and appellant were lost and trying to find their dog; appellant said that he and Miller were in the alley earlier looking for the dog; appellant said they were looking for the dog when Jeff came out of his house to help; and the electronics found in appellant's car were not reported as stolen.

We defer to the jury's apparent rejection of appellant's story about the dog as a ploy to deflect suspicion and hold that the evidence not supporting the verdict does not outweigh the evidence supporting the conviction so as to render the factfinder's determination manifestly unjust.[27] We further hold that the evidence supporting the verdict is not so weak that the judgment is "clearly wrong and manifestly unjust."[28]

Having held the evidence legally and factually sufficient, we overrule appellant's first issue.

---

[27] *Watson*, 204 S.W.3d at 414–15, 417; *Johnson*, 23 S.W.3d at 11.

[28] *Watson*, 204 S.W.3d at 414–15, 417.

12

## IV. Indigence

Appellant's second issue challenges the trial court's finding that appellant was not indigent for purposes of appeal and therefore not entitled to a court-appointed attorney or to a record at county expense. Without deciding whether the trial court abused its discretion by finding that appellant was not indigent, we hold that appellant has not been harmed.

Appellant was represented by retained counsel at trial and is represented by retained counsel on appeal. After trial counsel filed appellant's notice of appeal, appellant's appellate counsel filed a motion for new trial and motion in arrest of judgment. Appellate counsel then filed in this court a motion to enter an appearance as retained counsel on appeal, and trial counsel filed a motion to withdraw and substitute appellate counsel, which this court granted.

Appellate counsel asked us to abate the appeal to the trial court to conduct a hearing on appellant's motion for new trial. We granted the motion to abate and requested the trial court to conduct a hearing to determine, among other things, whether appellant was indigent. At the abatement hearing, appellant testified that his mother retained counsel for him because he had no money and could not afford to pay for appellate counsel.

Retained appellate counsel has filed an appellant's brief and the reporter's record has been prepared and paid for. Therefore, even if the trial court abused

13

its discretion by finding appellant is not indigent, we can say beyond a reasonable doubt that the error, if any, of the trial court has not harmed appellant on appeal.[29] We overrule appellant's second issue.

## V. Voir Dire

In his third issue, appellant contends that some of the prosecutor's comments during voir dire improperly implied that appellant was a habitual criminal. We hold that appellant's issue is inadequately briefed. Apart from bare assertions, appellant does not explain with any specificity which of the prosecutor's remarks implied he was a habitual criminal and how they did so. Further, appellant does not cite any authority or analysis to demonstrate that any such implication would be error. We overrule appellant's third issue.[30]

## VI. Motion for New Trial Testimony Excluded at Abatement Hearing

Appellant's fourth issue asserts that the trial court erred by not allowing him to testify on his motion for new trial at the abatement hearing ordered by this court. When an accused presents a motion for new trial raising matters not

---

[29] *See* Tex. R. App. P. 44.2(a); *see generally, Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007) (holding that deprivation of counsel during a critical stage was subject to harmless-error analysis).

[30] *See* Tex. R. App. P. 38.1(h); *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1053 (2001); *Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007) (holding that a one paragraph argument citing no authority was inadequately briefed).

14

determinable from the record, which could entitle him to relief, the trial court abuses its discretion by failing to hold a hearing.[31] The motion must, however, be supported by affidavit specifically showing the truth of the grounds of attack.[32] Here, although appellant filed a motion for new trial and a supplemental motion for new trial, none of the motions were supported by affidavit. We hold, therefore, that the trial court acted within its discretion by denying appellant a hearing on his motion for new trial.[33] We overrule appellant's fourth issue.

### VII.  Conclusion

Having overruled all of appellant's issues, we affirm the judgment.


PER CURIAM


PANEL:  CAYCE, C.J.; LIVINGSTON and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 26, 2009

---

[31] *Reyes v. State,* 849 S.W.2d 812, 816 (Tex. Crim. App. 1993).

[32] *Id.*

[33] *See id.*

15