COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-043-CR

 

 

DANIEL BOSS                                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  Introduction








Appellant Daniel Boss appeals his conviction for
burglary of a habitation.  In four
issues, he challenges the sufficiency of the evidence, the trial court=s
indigence finding, remarks by the State during voir dire, and the trial court=s
refusal at an abatement hearing to let appellant testify about claims he made
in a motion for new trial.  We affirm.

                                              II.  Facts

The garage to David Bonner=s home
in Carrollton, Denton County, Texas, faces an alley behind his house.  On March 25, 2007, in the early afternoon,
the garage door was open, and David was working behind a wooden privacy fence
in his backyard when he saw through the slats a woman carrying his golf clubs
from the garage into the alley.

David dashed into the alley after her.  He caught up after she had thrown the clubs
into the bushes.  David asked her why she
had taken his clubs, and after initially denying that she had, she explained
that she thought they were hers that had been stolen earlier.

David asked her to return his clubs to the
garage, and she was about to but hesitated when David=s wife,
who had followed David into the alley, announced that she was going to call the
police.  The woman declared that she did
not want to go to jail and turned around, walking back down the alley.








David followed her as appellant, driving a green
Mitsubishi Eclipse, entered the alley and rolled slowly toward them.  David asked appellant if he knew the woman
and if he was with her.  Appellant denied
knowing her and continued down the alley and onto the adjoining street.  As the car passed by, the Bonners noticed
that the backseat was loaded with Aelectronic
components.@ 
David followed the woman another several minutes before returning home.

In the meantime, a neighbor had called the
police.  Carrollton Police Officer Joseph
Nault arrived with officer-in-training Francisco Reyes and interviewed the
Bonners.

Very shortly thereafter, in the nearby Castle
Hills neighborhood of Lewisville, Texas, Jeff Deserrano drove the family SUV
into the garage from the alley behind their home after a weekend outing at the
lake.  His wife and children climbed out
and into the family=s other car for a trip to the
grocery store while Jeff stayed behind to unload the boat and the SUV.








He was going back and forth between the house and
garage when he noticed appellant just outside the garage with his back to
him.  Jeff asked, AWhat are
you doing?  Can I help you?@  Appellant responded by asking if Jeff had
seen a dog and nervously ran around as if looking for a dog.  Jeff noticed a green Mitsubishi Eclipse with
a woman in the passenger seat parked in the alley behind the house.  Suspicious, Jeff memorized the car=s
license plate and asked appellant for his telephone number in case the dog
showed up.  Appellant refused, telling
Jeff to just hold on to the dog if he found it. 
He then climbed into the car with the woman and drove away.  Jeff called the police and went back into the
garage to see if anything was missing. 
He noticed that his golf clubs had been displaced from the rack where he
usually kept them.

Lewisville Police Officer Steve Schaffer
responded to a dispatch that described suspicious persons in a green Mitsubishi
Eclipse in the Castle Hills neighborhood. 
As Officer Schaffer headed toward the Deserranos= home,
he saw appellant=s car approaching in the far
left-hand lane on the other side of the divided roadway.  As the cars met and passed, Officer Schaffer
made a U-turn to get behind the Eclipse. 
Without signaling, appellant immediately crossed the center lane into
the far right-hand lane and turned onto the next street.  With the officer in pursuit, appellant
accelerated, finally stopping in Carrollton after Officer Schaffer had
activated his emergency lights and siren.

Officer Nault was preparing his report after
meeting with the Bonners when Lewisville police requested assistance on a stop
in Carrollton.  The car=s
description matched the one that the Bonners had given.  Officer Nault drove to the site where
Lewisville officers had pulled over appellant and Jodie Lynn Miller, a woman
matching the description the Bonners had given of the woman who had taken David=s clubs.

An officer transported the Bonners from their
home to the stop, whereupon they immediately recognized the green Eclipse,
appellant, and Miller, despite her having changed her clothes and put up her
hair.








In the Eclipse, officers found a VCR, a stereo,
and a pink shirt and flip flops that Miller had worn while taking David=s golf
clubs.

Officer Schaffer took digital photographs of
appellant, the car, and Miller to the Deserranos= home
and showed the photographs to Jeff, who identified appellant as the man he had
seen standing outside his garage and Miller as the woman he had seen in the
green Eclipse.

Appellant was charged with burglary of a
habitation.  At trial, the jury was
authorized to convict him as a party and returned a verdict of guilty.  The State presented punishment evidence of
appellant=s multiple prior convictions,
and the jury assessed punishment at ninety-nine years=
confinement.  The trial court sentenced
appellant accordingly.

                              III.  Legal and Factual Sufficiency

Appellant=s first
issue on appeal challenges the legal and factual sufficiency of the evidence to
support the verdict.

                                    A.  Standards of Review








In reviewing legal sufficiency, we consider all
the evidence in the light most favorable to the verdict and determine whether a
rational juror, based on the evidence and reasonable inferences supported by
the evidence, could have found the essential elements of the crime beyond a
reasonable doubt.[2]  We defer to the Aresponsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh
evidence, and to draw reasonable inferences from basic facts to ultimate facts.@[3]  The jury is permitted to draw multiple
inferences as long as each inference is supported by the evidence presented at
trial.[4]  Each fact need not point directly and
independently to appellant=s guilt,
as long as the cumulative force of all the incriminating circumstances is
sufficient to support the conviction.[5]  Circumstantial evidence is as probative as
direct evidence in establishing guilt, and circumstantial evidence alone can be
sufficient to support a conviction.[6]  On appeal, the standard of review is the same
for both circumstantial and direct evidence cases.[7]








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.[8]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.[9]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[10]













In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by evidence
that is legally sufficient, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@[11]  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence.[12]  We may not simply substitute our judgment for
the factfinder=s.[13]  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@[14]  Thus, we must give due deference to the
factfinder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@[15]  Our deference in this regard safeguards the
defendant=s right to a trial by jury.[16]  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.[17]  Moreover, an opinion reversing and remanding
on factual sufficiency grounds must detail and clearly state why the finding in
question is factually insufficient and under which ground.[18]

                          B.  Elements of Burglary of a Habitation

A person commits burglary of a habitation when,
without the effective consent of the owner, the person enters a habitation with
intent to commit theft.[19]  A habitation is a structure adapted for the
overnight accommodation of persons and includes each connecting structure.[20]  A garage is a habitation.[21]

         C.  Criminal Responsibility for Burglary of a
Habitation as a Party








In proving burglary of a habitation under the law
of parties, it is not necessary that the defendant be the one who enters the
building.[22]  A person may be convicted of burglary as a
party Aif,
acting with intent to promote or assist the commission of the burglary, he
solicits, encourages, directs, aids, or attempts to aid@ another
person to commit the burglary.[23]  The intent to promote or assist in the
commission of the offense goes to each element of the offense charged.[24]  We look at Aevents
occurring before, during and after the commission of the offense and may rely
on actions of the defendant which show an understanding and common design to do
the prohibited act.@[25]

                                            D.  Analysis

The record shows that David Bonner saw Miller
leaving his garage with his golf clubs. 
Miller was wearing a pink shirt and pink flip flops.  As David was confronting Miller, he and his
wife saw appellant drive past them in a green Mitsubishi Eclipse with
electronics in the back.








Approximately a half-hour later, Jeff Deserrano
saw appellant standing just outside his garage door.  Appellant said he was looking for his dog but
would not give Jeff any contact information in case the dog showed up.  Instead, he told Jeff to hold on to the dog
if he found it.  Appellant climbed into a
green Mitsubishi Eclipse and drove away. 
Jeff subsequently noticed that his golf clubs had been moved from their
rack in his garage.

Officer Schaffer stopped a green Mitsubishi
Eclipse close by and heading away from Jeff=s home
that matched the description and license plate number Jeff had provided.  Miller was in the passenger seat.  Because she matched the Bonners=
description of the woman who had taken David=s golf
clubs, the officers picked up the Bonners and brought them to the stop,
whereupon the Bonners immediately recognized Miller, the green Mitsubishi
Eclipse, and appellant.  Miller had
changed her clothes and put her hair up. 
Inside the car, officers found the pink shirt and flip flops that the
Bonners saw Miller wearing when she took David=s golf
clubs.  We hold that the evidence is
legally sufficient to support the jury=s
finding that appellant is guilty as a party of burglary of a habitation because
a rational jury could reasonably believe beyond a reasonable doubt that
appellant aided or attempted to aid Miller to commit burglary at the Bonners= home by
driving the getaway car.[26]








Having found the evidence legally sufficient, we
now address appellant=s factual insufficiency
claim.  There is evidence in the record
that arguably does not support appellant=s participation
as a party to the burglary committed by Miller. 
Appellant told Jeff he was looking for his lost dog; Miller told Jeff
that his dog=s barking would attract their
dog; appellant told officers that they had gone out to clean the car, became
lost, and that their dog had run away when they switched drivers; Miller told
Officer Nault that she and appellant were lost and trying to find their dog;
appellant said that he and Miller were in the alley earlier looking for the
dog; appellant said they were looking for the dog when Jeff came out of his
house to help; and the electronics found in appellant=s car
were not reported as stolen.

We defer to the jury=s
apparent rejection of appellant=s story
about the dog as a ploy to deflect suspicion and hold that the evidence not
supporting the verdict does not outweigh the evidence supporting the conviction
so as to render the factfinder=s
determination manifestly unjust.[27]   We further hold that the evidence supporting
the verdict is not so weak that the judgment is Aclearly
wrong and manifestly unjust.@[28]

Having held the evidence legally and factually
sufficient, we overrule appellant=s first
issue.








                                           IV.  Indigence

Appellant=s second
issue challenges the trial court=s
finding that appellant was not indigent for purposes of appeal and therefore
not entitled to a court-appointed attorney or to a record at county
expense.  Without deciding whether the
trial court abused its discretion by finding that appellant was not indigent,
we hold that appellant has not been harmed.

Appellant was represented by retained counsel at
trial and is represented by retained counsel on appeal.  After trial counsel filed appellant=s notice
of appeal, appellant=s appellate counsel filed a
motion for new trial and motion in arrest of judgment.  Appellate counsel then filed in this court a
motion to enter an appearance as retained counsel on appeal, and trial counsel
filed a motion to withdraw and substitute appellate counsel, which this court
granted.

Appellate counsel asked us to abate the appeal to
the trial court to conduct a hearing on appellant=s motion
for new trial.  We granted the motion to
abate and requested the trial court to conduct a hearing to determine, among
other things, whether appellant was indigent. 
At the abatement hearing, appellant testified that his mother retained
counsel for him because he had no money and could not afford to pay for
appellate counsel.








Retained appellate counsel has filed an appellant=s brief
and the reporter=s record has been prepared and
paid for.  Therefore, even if the trial
court abused its discretion by finding appellant is not indigent, we can say
beyond a reasonable doubt that the error, if any, of the trial court has not
harmed appellant on appeal.[29]  We overrule appellant=s second
issue.

                                            V.  Voir Dire

In his third issue, appellant contends that some
of the prosecutor=s comments during voir dire
improperly implied that appellant was a habitual criminal.  We hold that appellant=s issue
is inadequately briefed.  Apart from bare
assertions, appellant does not explain with any specificity which of the
prosecutor=s remarks implied he was a
habitual criminal and how they did so. 
Further, appellant does not cite any authority or analysis to
demonstrate that any such implication would be error.  We overrule appellant=s third
issue.[30]

       VI.  Motion for New Trial Testimony Excluded at
Abatement Hearing








Appellant=s fourth
issue asserts that the trial court erred by not allowing him to testify on his
motion for new trial at the abatement hearing ordered by this court.  When an accused presents a motion for new
trial raising matters not determinable from the record, which could entitle him
to relief, the trial court abuses its discretion by failing to hold a hearing.[31]  The motion must, however, be supported by
affidavit specifically showing the truth of the grounds of attack.[32]  Here, although appellant filed a motion for
new trial and a supplemental motion for new trial, none of the motions were
supported by affidavit.  We hold,
therefore, that the trial court acted within its discretion by denying appellant
a hearing on his motion for new trial.[33]  We overrule appellant=s fourth
issue.

                                          VII.  Conclusion

Having overruled all of appellant=s
issues, we affirm the judgment.

 

PER CURIAM

 

PANEL:  CAYCE, C.J.; LIVINGSTON and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 26, 2009











[1]See Tex. R. App. P. 47.4.





[2]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007).





[3]Jackson, 443 U.S. at 318B19, 99 S. Ct. at 2789; Hooper,
214 S.W.3d at 13.





[4]Hooper, 214 S.W.3d at 15.





[5]Id. at 13; see Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), cert. denied, 511
U.S. 1046 (1994).





[6]Clayton, 235 S.W.3d at 778; Hooper,
214 S.W.3d at 13; Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App.
2004).





[7]Hooper, 214 S.W.3d at 13; Guevara,
152 S.W.3d at 49.





[8]Neal v. State, 256 S.W.3d 264, 275
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 1037 (2009); Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).





[9]Lancon v. State, 253 S.W.3d 699, 705
(Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15, 417.





[10]Watson, 204 S.W.3d at 417.





[11]Id.





[12]Id.





[13]Johnson v. State, 23 S.W.3d 1, 12 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).





[14]Johnson, 23 S.W.3d at 8.





[15]Id. at 9.





[16]Lancon, 253 S.W.3d at 704.





[17]Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).





[18]Goodman v. State, 66 S.W.3d 283, 287
(Tex. Crim. App. 2001); Johnson, 23 S.W.3d at 7.





[19]Tex. Penal Code Ann. ' 30.02(a)(1) (Vernon
2003).





[20]Id. ' 30.01(1)(B).





[21]Jones v. State, 532 S.W.2d 596, 599
(Tex. Crim. App. 1976), overruled on other grounds by Blankenship v. State,
780 S.W.2d 198, 210 (Tex. Crim. App. 1989); Johnson v. State, 690 S.W.2d
318, 320 (Tex. App.CDallas 1985, pet. ref=d).





[22]Powell v. State, 194 S.W.3d 503, 507
(Tex. Crim. App. 2006).





[23]See Tex. Penal Code Ann. ' 7.02(a)(2); Hooper,
214 S.W.3d at 13; Frank v. State, 183 S.W.3d 63, 72 (Tex. App.CFort Worth 2005, pet. ref=d).





[24]See Stephens v. State, 717 S.W.2d 338, 340
(Tex. Crim. App. 1986); Duke v. State, 950 S.W.2d 424, 427 (Tex. App.CHouston [1st Dist.] 1997,
pet. ref=d).





[25]Hooper, 214 S.W.3d at 13 (quoting
Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), cert.
denied, 476 U.S. 1101 (1986)).





[26]See Tex. Penal Code Ann. '' 7.02(a)(2), 30.02(a)(1);
Hooper, 214 S.W.3d at 13; Frank, 183 S.W.3d at 72.





[27]Watson, 204 S.W.3d at 414B15, 417; Johnson,
23 S.W.3d at 11.





[28]Watson, 204 S.W.3d at 414B15, 417.





[29]See Tex. R. App. P. 44.2(a);
see generally, Cooks v. State, 240 S.W.3d 906, 911 (Tex. Crim. App.
2007) (holding that deprivation of counsel during a critical stage was subject
to harmless-error analysis).





[30]See Tex. R. App. P. 38.1(h);
Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 1053 (2001); Sierra v. State, 157 S.W.3d 52, 60
(Tex. App.CFort Worth 2004), aff=d, 218 S.W.3d 85 (Tex.
Crim. App. 2007) (holding that a one paragraph argument citing no authority was
inadequately briefed).





[31]Reyes v. State, 849 S.W.2d 812, 816
(Tex. Crim. App. 1993).





[32]Id.





[33]See id.