PD-1093-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/23/2015 2:52:04 PM
Accepted 9/24/2015 3:50:51 PM
ABEL ACOSTA
CLERK

**PD-1093-15**

**IN THE**
**COURT OF CRIMINAL APPEALS**
**OF TEXAS**

_____

**YALANDA RENEE LIND,**
**Petitioner**

**v.**

**STATE OF TEXAS**

_____

**Petition in Cause No. 2012-1147-C2 from the**
**54th District Court of McLennan County, Texas and**
**The Court of Appeals for the Tenth**
**Supreme Judicial District of Texas**
**No. 10-14-00201-CR**

_____

**PETITION FOR DISCRETIONARY REVIEW**

_____

FILED IN
COURT OF CRIMINAL APPEALS

September 24, 2015

ABEL ACOSTA, CLERK

John A. Kuchera
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Petitioner

September 23, 2015

i

## Identity of Judge, Parties, and Counsel

Honorable Matt Johnson, 54th District Court, 501 Washington Avenue, Waco, Texas 76701; Trial Judge

Michael Jarrett, Assistant District Attorney, McLennan County, Texas, 219 N. 6th St., Suite 200, Waco, Texas 76701; State's Trial Counsel

Hilary LaBorde, Assistant District Attorney, McLennan County, Texas, 219 N. 6th St., Suite 200, Waco, Texas 76701; State's Trial Counsel

Sterling Harmon, Assistant District Attorney, McLennan County, Texas, 219 N. 6th St., Suite 200, Waco, Texas 76701; State's Appellate Counsel

Gabe Price, Assistant District Attorney, McLennan County, Texas, 219 N. 6th St., Suite 200, Waco, Texas 76701; State's Appellate Counsel

Russell Hunt, Sr., 425 Austin Ave. Suite 1202, Waco, Texas 76701, Appellant's Trial Counsel

Michelle Tuegel, 425 Austin Ave. Suite 1202, Waco, Texas 76701, Appellant's Trial Co-Counsel

John Kuchera, 210 N. 6th St., Waco, Texas 76701, Appellant's Appellate Counsel

Yalanda Renee Lind, Appellant, TDC # 1941674, Crain Unit, 1401 State School Road, Gatesville, Texas 76599

# Table of Contents

                                                                    **Page**

**Identity of Judge, Parties, and Counsel**                          ii

**Table of Contents**                                                iii-v

**Table of Authorities**                                             vi-vii

**Statement Regarding Oral Argument**                                viii

**Statement of the Case**

    First issue                                   1-3

    Second issue                                  3-4

    Third and fourth issues                       5-6

**Statement of Procedural History**                                  6-7

**Questions/Issues for Review**                                      8

**1.** In a capital murder (murder committed in the course of attempting to commit robbery) sufficiency of the evidence analysis under a parties theory, is it reasonable for a reviewing court to infer from motive alone that the defendant had the necessary intent to commit the robbery?

**2.** Should a party application paragraph in a capital murder jury charge require the jury to specifically find that the defendant intended to assist both offenses – murder and robbery – in order to find the defendant guilty?

**3.** The Waco Court improperly ignored undisputed facts in viewing the evidence "in the light most favorable to the verdict."

**4.** The Tenth Court failed to apply the rigorous sufficiency of evidence review

required by *Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010).

## Argument

*Reason for granting review regarding first issue*

(a) The Tenth Court's reliance on Yalanda's motive to get money, in and of itself, as constituting sufficient evidence of intent to commit theft is inconsistent with *Herrin v. State,* 125 S.W.3d 436 (Tex. Crim. App. 2002) and *Brewer v. State,* 126 S.W.3d 295 (Tex.App.—Beaumont 2004, pet. ref'd).  ... 9-11

*Reasons for granting review regarding second issue*

(a) The Tenth Court's reliance on *Holford v. State* ignores the differences between the application paragraph therein and the application paragraph in the instant case.  ... 11-13

(b) The Tenth Court's reliance on *Holford v. State*, a Houston First Court decision, ignores the First Court's decision in *Duke v. State,* 950 S.W.2d 424 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd).  ... 14-16

*Reasons for granting review regarding third and fourth issues*

(a) The Waco Court's sufficiency of the evidence analysis as to Yalanda's intent to commit the murder improperly failed to take into account undisputed facts, thus putting the opinion in conflict with *Evans v. State,* 202 S.W.3d 158 (Tex. Crim. App. 2006).  ... 16-17

(b) Inferences made by the Waco Court regarding Yalanda's conversation with Lowrey about money were improper in light of *Hooper v. State,* 214 S.W.3d 9 (Tex. Crim. App. 2007) and *Urbano v. State,* 837 S.W.2d 114, 116 (Tex. Crim. App. 1992).  ... 17-20

(c) Inferences made by the Waco Court regarding Yalanda's statement, "he killed the wrong one," were improper in light of *Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013).  20-22

**Prayer for Relief**  23

**Certificate of Service**  24

**Certificate of Compliance**  25

**Appendix A:** Copy of the unpublished opinion of the Tenth Court of Appeals in *Lind v. State*, No. 10-14-00201-CR, 2015 WL 4507672 (Tex.App.—Waco July 23, 2015)

**Appendix B:** Defendant's Exhibits 1-7

# Table of Authorities

**Page(s)**

**Cases**

*Barnhart v. Thomas*,
    540 U.S. 20 (2003)...............................................................................13

*Brewer v. State*,
    126 S.W.3d 295 (Tex.App.—Beaumont 2004, pet. ref'd) .............2, 9, 10, 11, 17

*Brooks v. State*,
    323 S.W.3d 893 (Tex. Crim. App. 2010) .......................................................8, 17

*City of Keller v. Wilson*,
    168 S.W.3d 802 (Tex.2005)....................................................................16

*Clear v. State*,
    76 S.W.3d 622 (Tex.App.—Corpus Christi 2002, no pet.)...............................15

*Cosio v. State*,
    353 S.W.3d 766 (Tex. Crim. App. 2011) ..........................................................15

*Duke v. State*,
    950 S.W.2d 424 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd).............14, 15

*Evans v. State*,
    202 S.W.3d 158 (Tex. Crim. App. 2006) ..........................................................16

*Herrin v. State*,
    125 S.W.3d 436 (Tex. Crim. App. 2002) .......................................................9, 10

*Holford v. State*,
    177 S.W.3d 454 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd)4, 11, 12, 13, 14

*Hooper v. State*,
    214 S.W.3d 9 (Tex. Crim. App. 2007) ...........................................17, 19, 20, 22

*Lawton v. State*,
    913 S.W.2d 542 (Tex. Crim. App. 1995) ...........................................................5

*Lind v. State*,
No. 10-14-00201-CR, 2015 WL 4507672 (Tex.App.—Waco July 23, 2015)...2, 3, 4, 6, 7, 17, 20

*Robinson v. State*,
266 S.W.3d 8 (Tex.App.—Houston [1st Dist.] 2008, pet. ref'd) ........................15

*Urbano v. State*,
837 S.W.2d 114 (Tex. Crim. App. 1992) ................................................17, 18, 19

*Winfrey v. State*,
323 S.W.3d 875 (Tex. Crim. App. 2010) ....................................................17, 22

*Winfrey v. State*,
393 S.W.3d 763 (Tex. Crim. App. 2013) ................................................20, 21, 22

## Other Authorities

Anne Stillman, *Grammatically Correct, An Essential Guide to Punctuation, Style, Usage & More*........................................................................................................12

Black's Law Dictionary 942 (6th ed. 1990) ............................................................18

New Webster's Dictionary of the English Language 562 (1971) ...........................18

## Statement Regarding Oral Argument

Petitioner believes oral argument would assist this Court by allowing for further discussion regarding why the Waco Court's inferences made in support of its affirmance were not reasonable inferences.

| YALANDA RENEE LIND, | } | IN THE TEXAS COURT |
|---|---|---|
| Petitioner | } | |
| | } | OF CRIMINAL APPEALS |
| v. | } | |
| | } | |
| THE STATE OF TEXAS | } | |

## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE TEXAS COURT OF CRIMINAL APPEALS:

Now comes Yalanda Renee Lind ("Yalanda"), Petitioner, by and through undersigned counsel, and files this petition for discretionary review, in accordance with the directives of Rule 66 of the Texas Rules of Appellate Procedure.

## Statement of the Case

Rebecca Leonard ("Rebecca") was Yalanda's mother. Yalanda moved in with Rebecca in September of 2006 at Rebecca's house. On the night of October 12th, 2008, Jeremy Lowrey ("Jeremy") entered the house, stabbed Rebecca to death and seriously injured Rebecca's boyfriend, Jerry Patterson ("Jerry") by stabbing him.

### First issue

The State made it clear to the jury, both during voir dire and closing argument, that it was prosecuting Yalanda under a party theory, both as to the murder and the

attempted robbery. And the Tenth Court addressed Yalanda's sufficiency of the evidence argument under a party theory. 2015 WL 4507672, at *3. As the State correctly noted during jury selection, it had to prove essentially two offenses, murder and robbery:

> Let's talk about what Capital Murder is. We've talked generally about what it is. It's the intentional murder in the course of committing a robbery. It sounds very simple, but that's truly all it is. It's a combination of two crimes.

*See Brewer v. State,* 126 S.W.3d 295, 297 (Tex.App.—Beaumont 2004, pet. ref'd) ("To establish capital murder committed during the course of robbery, the State must prove, . . . in addition to the murder, that the defendant possessed the specific intent to obtain or maintain control of the victim's property either before or during the commission of the murder.").

The State's theory was that Rebecca let Jeremy into the house so they could steal Rebecca's money. Yalanda's purported motive was based on the facts that she owed Rebecca money and Rebecca had asked her to move out of the house. But no money was stolen and there was no evidence that Yalanda knew Rebecca had any money in the house. The State's witness (Jerry) testified that the conversation he heard between Yalanda and Jeremy regarding money had to do with Yalanda's money – not Rebecca's money:

I went through the hallway. . . . Rebecca was on the floor. . . Whenever I went out the hall to go out the door – the kitchen is sitting here . . . [a]nd the stove is here. [Yalanda] was sitting on the floor in front of the stove. . . . [T]he guy [Lowrey] had his back to me. I still didn't know who he was. . . . *And the guy asked . . . where is the money[?] She said, I don't have any money, there's not any money, I haven't worked for a couple of days.*

Yalanda argued on appeal, *inter alia*, that motive alone does not constitute an intent to commit robbery. The Tenth Court disagreed:

There was evidence that Yalanda owed Rebecca money. Rebecca kept a ledger recording the amount of money owed to her by Yalanda. Jerry and Rebecca told Yalanda that she would have to move out of the house, and Yalanda testified that she did not have enough money to be able to pay her bills. The evidence shows, and Yalanda concedes in her brief, that Jeremy had intent to commit theft, and that he caused bodily injury to another.

2015 WL 4507672, at *4.

*Second issue*

In the trial court's jury charge, immediately after the application paragraph that instructed on convicting Yalanda as a principal, the court included the following paragraph instructing on what the jury would need to find to convict under a party theory to capital murder:

Or, if you believe from the evidence beyond a reasonable doubt that someone other than Yalanda Renee Lind, on or about the 13th day of October, 2008, in the County of McLennan and State of Texas, did then and there *intentionally cause the death of an individual*, namely, Rebecca Leonard, by stabbing and cutting Rebecca Leonard with a

- 3 -

knife, and someone other than the Defendant was then and there *in the course of committing or attempting to commit the offense or Robbery* of Rebecca Leonard or Jerry Patterson, and you further find and believe beyond a reasonable doubt that Yalanda Renee Lind, acting with intent to promote or assist another person to commit *said offense*, solicited, encouraged, directed, aided, or attempted to aid another person to commit *said offense*, then you will find the Defendant guilty of the offense of Capital Murder, as alleged in Count 1 of the indictment in the same manner as if you found that the offense was committed by the Defendant's own conduct, and so say by your verdict.

While this paragraph correctly instructed that the evidence must show that another person intentionally caused the death of Rebecca Leonard and that this other person was in the course of committing robbery at the time, the paragraph did not require a finding that Yalanda acted with intent to assist both offenses – only "said offense."  She argued on appeal that she was egregiously harmed in that this instruction only required the jury to find that she intended to assist one of the offenses – not both – thereby impermissibly decreasing the State's burden of proof and allowing for a non-unanimous verdict.  The Tenth Court disagreed, citing *Holford v. State,* 177 S.W.3d 454 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd):

> The defendant in *Holford* argued that the charge permitted the jury to convict him as a party to capital murder if he intended to aid in only one offense rather than in both offenses. *Holford v. State,* 177 S.W.3d at 460. In *Holford,* the Court noted that the charge describes the capital murder as necessarily occurring "while in the course of committing or attempting to commit the robbery." *Holford v. State,* 177 S.W.3d at 461. The Court did not find that the charge was erroneous. We agree. We overrule Yalanda's third issue.

2015 WL 4507672, at *5.

*Third and fourth issues*

Again, the State was proceeding under a party theory against Yalanda, both as to the murder and the attempted robbery. For an accused can be found guilty as a party for the conduct of another who intentionally committed the murder, it must be shown that the accused harbored a specific "intent to promote or assist the commission of" the intentional murder that the other committed. *Lawton v. State,* 913 S.W.2d 542, 554 (Tex. Crim. App. 1995). Twenty-one pages of Yalanda's brief are devoted to addressing each of the following pieces of evidence relied by the State (from before the murder, at the time of the murder, and after the murder), and why they did not add up to proof of Yalanda's intent to kill:

> *Purchase of the murder weapon*
> *Jeremy and Yalanda were not "boyfriend – girlfriend"*
> *at the time of the murder*
> *Yalanda was not angry at being asked to move out*
> *Yalanda owed Rebecca money*
> *Yalanda not in Rebecca's will*
> *Yalanda's conduct at the time of the murder*
> *Yalanda's purported conversation with Jeremy about*
> *getting the "money in the house"*
> *Were all the doors and windows locked?*
> *The trail of blood*
> *The "repositioned" knife*
> *"He killed the wrong one"*
> *Lack of sadness*

The Tenth Court disagreed, seizing upon the evidence that doors and windows were locked, Yalanda and Jeremy were calmly discussing money, and Yalanda's statement "he killed the wrong one":

*Jerry testified that the doors and windows were locked on the night of the murder* and that neither he nor Rebecca unlocked the doors or windows that night. There was testimony from police officers that there was no evidence of a forced entry into the home. The jury could reasonably infer that Yalanda allowed Jeremy into the house on the night of the murder.

Jerry testified that after he and Rebecca were attacked, Yalanda and Jeremy were *calmly discussing money in the kitchen*. Jerry did not see any altercation between Jeremy and Rebecca. There was also evidence that Yalanda did not suffer any visible injuries on the night of the offense.

Debra McCall testified that Jerry is her husband's uncle. They received a call after the offense to come to the hospital. Debra testified that she saw Yalanda at the hospital on October 13. Yalanda told Debra that Jeremy had committed the offenses. Yalanda further told Debra, *"he killed the wrong one."* Debra stated that Yalanda did not seem worried about her mother, but rather was more concerned about items in the house and the worth of those items. Debra testified that she assisted in cleaning the house after the offenses. Debra and Charlene Kirby, the executor of Rebecca's will, found cash hidden in the house.

2015 WL 4507672, at *5.


## Statement of Procedural History

Yalanda was convicted by a jury of capital murder (intentional killing of Rebecca Leonard in the course of committing robbery) and aggravated assault (causing bodily injury to Jerry Patterson with use/exhibition of a deadly weapon). On June 30, 2014, the trial court sentenced Yalanda to life in prison without parole for the capital murder conviction as required by law (the State chose not to pursue

the death penalty), and twenty years in prison on the aggravated assault conviction. She timely filed her notice of appeal on June 30, 2014.

Yalanda timely filed her notice of appeal June 3, 2014. The Tenth Court affirmed Yalanda's convictions and sentences in an unpublished opinion, *Lind v. State*, No. 10-14-00201-CR, 2015 WL 4507672 (Tex.App.—Waco July 23, 2015).

Yalanda was granted an extension through September 23, 2015 to file her Petition for Discretionary Review. This PDR is therefore timely filed.

## Questions/Issues for Review

**1.** In a capital murder (murder committed in the course of attempting to commit robbery) sufficiency of the evidence analysis under a parties theory, is it reasonable for a reviewing court to infer from motive alone that the defendant had the necessary intent to commit the robbery?

*4 RR 99; 5 RR 13-18, 25-26, 76-77; 6 RR 151, 154, 192, 215; 7 RR 146-47; 8 RR 153, 194, 197-99, 202-03, 244-45; CR 6; State Ex. 112*

**2.** Should a party application paragraph in a capital murder jury charge require the jury to specifically find that the defendant intended to assist both offenses – murder and robbery – in order to find the defendant guilty?

*4 RR 71; 8 RR 178, 238-39; CR 1391-93*

**3.** The Waco Court improperly ignored undisputed facts in viewing the evidence "in the light most favorable to the verdict."

*6 RR 72-73, 76-77, 83-85; 8 RR 13, 16-19, 25*

**4.** The Tenth Court failed to apply the rigorous sufficiency of evidence review required by *Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010).

*5 RR 121; 6 RR 35-36, 39-42, 45-46, 49-51, 54-55, 71, 76-77, 105-06, 116, 123, 151-53, 160, 198, 221-22, 270; 7 RR 35-38, 45-46, 199-200, 213-14; 8 RR 13-17, 23-24, 29-30, 53-54, 77-78, 102-03, 118, 153-54, 167, 198, 240; State Ex. 108, 110; Def. Ex. 1-7*

**Argument**

*Reason for granting review regarding first issue*

**(a) The Tenth Court's reliance on Yalanda's motive to get money, in and of itself, as constituting sufficient evidence of intent to commit theft is inconsistent with *Herrin v. State,* 125 S.W.3d 436 (Tex. Crim. App. 2002) and *Brewer v. State,* 126 S.W.3d 295 (Tex.App.—Beaumont 2004, pet. ref'd).**

In *Herrin v. State,* 125 S.W.3d 436 (Tex. Crim. App. 2002), wherein appellant was convicted of capital murder under a "murder in the course of robbery" (and kidnapping) theory, the Court of Criminal Appeals held that the evidence to sustain the conviction under the robbery theory was insufficient:

> There is no evidence that appellant knew Wayne had any money in his wallet or that appellant even knew whether Wayne had his wallet with him, and there is no evidence linking appellant to the wallet. Finally, an intent to steal Wayne's money cannot be reasonably inferred from evidence that Wayne owed appellant's father money about $16,000 for repayment for the purchase of a vehicle and other loans. There was evidence that appellant had a balance of over $13,000 in his bank account, suggesting that he did not need money.
>
> Viewed in a light most favorable to the verdict, we cannot conclude there is sufficient evidence upon which a rational jury could find *beyond a reasonable doubt* that appellant formed the intent to commit a robbery before or at the time of the murder. . . . While appellant's belief that Wayne or his family owed him money might supply the motive for murder, it does not supply the evidence that appellant took the wallet. (emphasis in original)

*Id.* at 441-42.

> In the instant case, any inferences would be based wholly on speculation arising from the missing wallet and appellant's belief that

9

Wayne or the Martindales owed him money. . . . [W]e have previously emphasized that (internal quotes omitted) if the evidence at trial raised on a suspicion of guilty, even a strong one, then that evidence is insufficient.

*Id.* at 443.

In *Brewer v. State,* 126 S.W.3d 295 (Tex.App.—Beaumont 2004, pet. ref'd), wherein appellant was convicted of capital murder (committing intentional murder in the course of committing robbery), the Beaumont Court held that the evidence was sufficient to prove an intentional killing, but not an intentional killing in the course of robbery:

There are three pieces of circumstantial evidence that support the [robbery]: (1) Brewer's anger of whether Sasser [the deceased] had sold him the agreed-upon amount of drugs; (2) Brewer's knowledge that Sasser had in his possession at least the several hundred dollars Brewer had just given him; and (3) the wallet found in the vehicle at the scene contained several cards indicating Sasser's ownership of same, but contained no money. Item 3 . . . tends to establish that a theft, a required element of robbery, had occurred. Items one and two, . . . while establishing Brewer might have a *motive* to rob Sasser, do not prove that he had the *intent* to do so. These are clearly different mental states. (some internal quotes omitted) *"Motive" refers to an emotion that would provoke or lead to the commission of a criminal offense. . . . A person acts with intent with respect to his conduct or to a result of his conduct when it is conscious objective or desire to engage in the conduct or cause the result. . . . While the evidence is sufficient to permit the jury to logically infer that Brewer had a provocation that could lead to the commission of a robbery, no logical inference can be drawn from the evidence that had formed the requisite conscious objective or desire to rob Sasser either before or during the commission of the murder. . . . There is neither physical nor testimonial direct evidence that a theft or robbery of Sasser took place, much less any direct evidence implicating Brewer in any robbery.* Further, there is no physical or testimonial evidence, direct or circumstantial, that would be probative of the

formation by Brewer of the intent to commit a robbery before or during the murder. The trier of fact would have to speculate in order to reach such a conclusion. (emphasis added)

*Id.* at 302-03.

*Reasons for granting review regarding second issue*

**(a) The Tenth Court's reliance on *Holford v. State* ignores the differences between the application paragraph therein and the application paragraph in the instant case.**

Again, the Tenth Court relied on *Holford v. State,* 177 S.W.3d 454 (Tex.App.-

Houston [1st Dist.] 2005, pet. ref'd) in addressing Yalanda's complaint that the jury

charge impermissibly reduced the State's burden of proof and also allowed for a

non-unanimous verdict. In order to address *Holford*, it is necessary to set forth the

complained of application paragraphs from each case:

*Holford*

If you find from the evidence beyond a reasonable doubt that on or about the 13th day of January, 2002, in Harris County, Texas, Harold Louis Vaughn, did then and there unlawfully while in the course of committing or attempting to commit the robbery of Trevor Cook, intentionally cause the death of Trevor Cook by striking Trevor Cook with a deadly weapon unknown to the Grand Jury, and that the defendant, David Charles Holford, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Harold Louis Vaughn to commit the offense, if he did;

... then you will find the defendant guilty of capital murder, as charged in the indictment.

11

*Holford*, 177 S.W.3d at 460.

In *Horford,* the sentence structure begins with the subject being the principal (Harold Louis Vaughn) – not the defendant prosecuted under a party theory (David Holford). This subject is then followed by the dependent clause, "while in the course of committing or attempting to commit the robbery of _____," which is then followed by the predicate in the sentence, "caused the death of _____.  A dependent clause cannot stand alone, but is dependent upon information contained elsewhere in the sentence.  See Anne Stillman, *Grammatically Correct, An Essential Guide to Punctuation, Style, Usage & More*, pg. 57 (2004 ed.).  Thus in *Horford*, in the subsequent prepositional phrase "with intent to promote or assist the commission of the offense" (applied to the defendant under a party theory), "the offense" refers back to both the robbery and the causing of death.  *See Holford,* 177 S.W.3d at 461. But the application paragraph herein is constructed differently.

*Instant case*

> Or, if you believe from the evidence beyond a reasonable doubt that someone other than Yalanda Renee Lind, on or about the 13th day of October, 2008, in the County of McLennan and State of Texas, did then and there intentionally cause the death of an individual, namely, Rebecca Leonard, by stabbing and cutting Rebecca Leonard with a knife, *and* someone other than the Defendant was then and there in the course of committing or attempting to commit the offense or Robbery of Rebecca Leonard or Jerry Patterson, and you further find and believe beyond a reasonable doubt that Yalanda Renee Lind, acting with intent to promote or assist another person to commit said offense, solicited, encouraged, directed, aided, or attempted to aid another person to

12

commit said offense, then you will find the Defendant guilty of the offense of Capital Murder, as alleged in Count 1 of the indictment in the same manner as if you found that the offense was committed by the Defendant's own conduct, and so say by your verdict.

Distilled to its relevant essentials, the application paragraph herein is constructed thusly:

> If you believe that someone other than the defendant committed the offense of causing the death of _____, *and* you believe that someone other than the defendant was in the course of committing the offense of robbery of _____, *and* you further believe the defendant assisted in the commission of the offense, then . . .

The phrase "and you further believe the defendant assisted in the commission of the offense," is a limiting clause. Under the grammatical "rule of the last antecedent," a limiting clause should read as modifying only the phrase that it immediately follows. *See Barnhart v. Thomas,* 540 U.S. 20, 26-27 (2003). Therefore grammatically, "the offense" refers only to the robbery, not the causing of death.

It should also be noted that the charge contained no language specifically instructing the jury that in order to find Yalanda guilty of capital murder, the jury had to find that she was assisting in both the causing of death and the robbery.[1]

---

[1] By way of contrast, in *Holford,* the jury charge included the following cautionary instruction immediately before the application paragraph:

**(b) The Tenth Court's reliance on _Holford v. State_, a Houston First Court decision, ignores the First Court's decision in _Duke v. State_, 950 S.W.2d 424 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd).**

In _Duke v. State,_ 950 S.W.2d 424 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd), wherein the appellant was convicted of capital murder (intentional murder in the course of robbery) under a party theory, appellant argued that he was harmed by an obverse instruction that required only that the jury find that he aided in the commission of the robbery. _Id._ at 426-27. The State's response and the First Court's comments thereon:

> Focusing on the application paragraph, the State argues use of "with intent to promote or assist the commission of _the offense_" was not erroneous. In most cases, _i.e.,_ those involving only one offense, we would agree with the State. However, the offense in question here is actually a combination of two offenses, murder and robbery. Under these circumstances, "the offense" in the application paragraph is ambiguous. We cannot overlook the danger a jury might seek clarification by referring to the obverse instruction which erroneously applied the specific intent of the law of parties to robbery, instead of capital murder, as the offense. Accordingly, we agree with appellant that the obverse instruction rendered the jury charge erroneous.

_Id._ at 427-28.

> [T]he error lay in instructing the jury, in regard to appellant's guilt as a party to the murder – robbery of Matthew Vickers, that appellant need only have had intent to promote and assist the commission of robbery,

---

Before you would be warranted in finding the defendant guilty of capital murder, ... you must find from the evidence beyond a reasonable doubt that the defendant, _David Charles Holford, with the intent to promote or assist in the commission of the offense of robbery, if any, solicited, encouraged, directed, aided, or attempted to aid Harold Louis Vaughn in cutting or striking Trevor Cook, if he did, with the intention of thereby killing Trevor Cook...._

_Holford,_ 177 S.W.3d at 461.

14

rather than capital murder. *The obvious danger is that the jury might have found appellant guilty as a party to the murder-robbery of Vickers without finding beyond a reasonable doubt that appellant intended to promote and assist the omission of the murder, as well as the robbery.* As appellant argues, this would have impermissibly diminished the State's burden of proof. (emphasis added)

*Id.* at 428.

The First Court ultimately held the error to be harmless because (1) the error occurred only in the obverse charge, not the application paragraph, and (2) the only theory submitted to the jury and argued to the jury was appellant's guilt as the primary actor – not as a party. *Id.* at 429.

Unlike the facts in Duke, the issue of whether or not Yalanda intended to assist in the commission of either offense was hotly contested as were the closing arguments. Because the application paragraph didn't require the jury to find that Yalanda assisted in both the murder and the underlying robbery, the jury may have returned a nonunanimous verdict – some believing she assisted in the robbery – others believing she assisted in the murder. *See Cosio v. State,* 353 S.W.3d 766, 771-72 (Tex. Crim. App. 2011). Because it is impossible to tell whether the jury was unanimous, Yalanda has shown egregious harm. *See Clear v. State,* 76 S.W.3d 622, 624 (Tex.App.—Corpus Christi 2002, no pet.) (egregious harm shown where it was impossible to determine whether jury was unanimous); *Robinson v. State,* 266 S.W.3d 8, 14-15 (Tex.App.—Houston [1st Dist.] 2008, pet. ref'd) ("Our review of the record leads us to conclude that a rational juror could have found Robinson guilty

15

beyond a reasonable doubt of capital murder based on either the valid theory or the invalid theory." . . . "[I]t is impossible to tell from the record which ground for conviction the jury selected. Having conducted an *Almanza* analysis, we hold that appellant was egregiously harmed by the error in the jury charge.").

*Reasons for granting review regarding third and fourth issues*

**(a) The Waco Court's sufficiency of the evidence analysis as to Yalanda's intent to commit the murder improperly failed to take into account undisputed facts, thus putting the opinion in conflict with *Evans v. State,* 202 S.W.3d 158 (Tex. Crim. App. 2006).**

In *Evans v. State,* 202 S.W.3d 158 (Tex. Crim. App. 2006), the Court of Criminal Appeals held that if the undisputed facts allow only one logical inference, neither jurors nor the reviewing court may disregard those facts. *Id.* at 162-63.

> Conclusive evidence is dispositive of the fact or element at issue. Such evidence "becomes conclusive (and thus cannot be disregarded) when it concerns physical facts that cannot be denied," or "when a party admits it is true."

*Id.* at 163 n. 16 (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 817 (Tex.2005)).

The Tenth Court's reliance on Jerry's testimony that he had not unlocked the doors and windows the night of the events in question improperly fails to take into account the undisputed fact that one of the doors could easily have been opened from outside. The following facts are undisputed regarding the night in question: (1) One of the entry doors to the house was only a storm door; (2) that storm door did not

16

have a lock, only a hook that fit into a loop; (3) even when the hook was in the loop, there was a gap between the door and the door frame, allowing an intruder to use a narrow object to displace the loop and open the door.[2]

Additionally, the Court of Criminal Appeals has held that a legal sufficiency review is to be *rigorous*[3], and requires that *all* the evidence be considered.[4]  On cross-examination Jerry admitted he couldn't say for sure that the windows were all secured.  The Waco Court makes no mention of this in its opinion.

**(b) Inferences made by the Waco Court regarding Yalanda's conversation with Lowrey about money were improper in light of *Hooper v. State,* 214 S.W.3d 9 (Tex. Crim. App. 2007) and *Urbano v. State,* 837 S.W.2d 114, 116 (Tex. Crim. App. 1992).**

Again, the Tenth Court relied in part in its sufficiency analysis on the fact that "Yalanda and Jeremy were calmly discussing money in the kitchen."  2015 WL 4507672, at *5.  As noted above, the discussion was about Yalanda's money – not Rebecca's money.

"In the law of evidence, an inference . . . is a logical consequence flowing from a proven fact."  *Brewer,* 126 S.W.3d at 297.  "Logic" is "the apparently unavoidable cause and effect relationship of events leading to a particular

---

[2] Defendant's exhibits 1-7, photos depicting this door, are attached hereto as Appendix B.

[3] *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

[4] *Winfrey v. State,* 323 S.W.3d 875, 878-79 (Tex. Crim. App. 2010)

conclusion."   New Webster's Dictionary of the English Language 562 (1971).

"Logical relevancy" is defined thusly:

> Existence of such a relationship in logic between the fact of which evidence is offered and a fact in issue that the existence of the former renders probable or improbable the existence of the latter.
>
> Black's Law Dictionary 942 (6th ed. 1990).

In *Urbano* the appellant argued that his capital murder conviction for committing murder for remuneration or the promise of remuneration was not supported by sufficient evidence.   *Urbano,* 837 S.W.2d at 115.   The Court of Criminal Appeals agreed:

> [T]he evidence and reasonable inferences therefrom established that at the time of the offense appellant was a member of a prison gang; that the gang had definite rules regarding murder, promotion in rank, and the consequences of promotion in rank; i.e., increased access to money, drugs, and goods; that appellant murdered on behalf of the gang; and that after the murder he rose in rank.  There was no direct evidence, however, that at the time of the killing, appellant was aware of the gang rules in question and that he acted with those rules in mind.  Nor was there circumstantial evidence from which the jurors could conclude beyond a reasonable doubt that appellant must have known of the relevant gang rules and committed the murder to receive a benefit from the operation of the rules.  *Certainly, the evidence raises a strong suspicion that appellant acted with the gang rules in mind, that is, that he murdered with an expectation of tangible benefit.  But appellant's intent or state of mind with respect to an expectation of benefit was not proven to a high degree of certainty.  Rational jurors could not conclude beyond a reasonable doubt simply from appellant's membership in the gang that he was aware of all the gang's rules.*

(emphasis added)

*Id.* at 116-17.

In *Hooper v. State,* 214 S.W.3d 9 (Tex. Crim. App. 2007), wherein appellant was convicted of aggravated assault of a public servant, the Court of Criminal Appeals addressed, *inter alia,* what is and what is not a reasonable inference. *Id.* at 15-17. The following language is instructive:

> Under the *Jackson* [*v. Virginia*] test, . . . juries are permitted to draw multiple reasonable inferences from the evidence (direct or circumstantial), but *they are not permitted to draw conclusions based on speculation.* Without concrete examples, it can be difficult to differentiate between inferences and speculation, and between drawing multiple reasonable inferences versus drawing a series of factually unsupported speculations. This hypothetical might help clarify the difference. A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation. But, what if there is also evidence that the other guns in the room are toy guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a toy gun was the shooter. It would also be reasonable to infer that the woman holding the smoking gun was the shooter. This would require multiple inferences based upon the same set of facts, but they are reasonable inferences when looking at the evidence. We first have to infer that she shot the gun. This is a reasonable inference because she is holding the gun, and it is still smoking. Next, we have to infer that she shot the person on the floor.

This inference is based in part on the original inference that she shot the gun, but is also a reasonable inference drawn from the circumstances.

*Id.* at 15-16.

The Waco Court could not reasonably infer that because Yalanda and Lowery were discussing Yalanda's money (or lack thereof), Yalanda therefore had an intent to steal Rebecca's money.

**(c) Inferences made by the Waco Court regarding Yalanda's statement, "he killed the wrong one," were improper in light of *Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013).**

Again, the Waco Court relied in part in its sufficiency analysis on the fact that "Yalanda further told Debra, 'he killed the wrong one.'" 2015 WL 4507672, at *5. The relevant exchange was as follows:

State: Were you able to go see Jerry at that time?

Debra: No, I wasn't.

State: What happened next?

Debra: They told me that I could go and be with Yalanda if that's what I wanted to do. So they had her in a room, which at the time I didn't know she was in the room with her mother. But they took me back there to where she was.

State: And what did you see when you got to that room?

Debra: I opened the door to the room where she was standing by her mother. And as I was walking in, her first words to me was, he killed the wrong one.

. . .

State: When she said, he killed the wrong one, *would that indicate to you that there was a right one that should have been killed*?

20

Debra:  You would assume that, yes.

6 RR 123.  The Waco Court apparently infers from this exchange that Yalanda wanted Jerry killed – not Rebecca.

In *Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013), appellant was convicted of, *inter alia,* capital murder during the course of robbery.  *Id.* at 765.  The only evidence actually connecting appellant to the crime scene was a dog scent lineup.  *Id.*  Other evidence relied on by the State included the following:

- Appellant spoke with her ex-husband about "having attended a concert together around the time of murder," a statement interpreted by appellant's ex-boyfriend as an attempt to establish an alibi;
- Appellant told her boyfriend at the time (after the murder), while they were partying and drinking, that going into the decedent's home "was an easy lick," interpreted by the boyfriend to mean "she would get money;
- Appellant was heard by a teacher to say to decedent at school[5] "When are you going to take me out and spend that money that you have?  We all know you have money hid at home";
- Appellant was overheard by a teacher, referring to decedent, "Somebody should beat the shit out of him."

*Id.* at 766.

The Court of Criminal Appeals noted, "a strong suspicion of guilt does not equate with legally sufficient evidence of guilt."  *Id.* at 769.  The Court held the

---

[5] Appellant was a high school student at the time of the murder and the decedent worked at the high school.  *Id.* at 764.

21

evidence to be legally insufficient:

> The circumstantial evidence that the state presents as indicia of appellant's guilt of the capital-murder offense appears more speculative than inferential as to appellant's guilt.

*Id.* at 771.

> Basing a finding of appellant's guilt on this evidence and all of the other evidence is, at best, "mere theorizing or guessing" about appellant's possible guilt rather than a reasonable inference based upon evidence and facts presented. "A conclusion reached by speculation ... is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt." *Hooper v. State,* 214 S.W.3d at 16. After reviewing all of the evidence in the light most favorable to the guilty verdict, we hold that the evidence merely raises a suspicion of appellant's guilt and is legally insufficient to support a conviction of capital murder beyond a reasonable doubt. Accordingly we sustain appellant's first ground for review.

*Id.* at 772-73.

As to the instant case Debra McCall's deceased husband (to whom she had been married 18 years) was Jerry's nephew. She was very close to him. It would absolutely defy logic for Yalanda to tell Debra to her face that Jerry was the one she meant to have killed. Yet that is the inference the Waco Court makes. Additionally, this statement by Yalanda was far less damning than the four statements in *Winfrey* that the Court of Criminal Appeals found insufficient to establish guilt.

## **Prayer for Relief**

Yalanda requests that this Court grant review, and after full briefing on the merits, reverse the Tenth Court's holding with a directive of acquittal on both the capital murder count and the aggravated assault count.

Alternatively, Yalanda requests that this Court reverse the Tenth Court's holding that the jury charge was proper and remand the cause for a new trial.

Alternatively, Yalanda requests that this Court reverse the Tenth Court's holding that there was sufficient evidence as to Yalanda's guilt as a party to robbery, and remand the case for a new punishment hearing on murder – not capital murder.

Respectfully submitted,
/s/ John A. Kuchera
John A. Kuchera
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com

Attorney for Petitioner

## Certificate of Service

This is to certify that copies of the above-entitled Petition for Discretionary Review have been served on both the District Attorney of McLennan County, Texas, and the State Prosecuting Attorney, by delivery of a true copy to them by mail, by depositing same, in an official depository under the care and custody of the United States Postal Service on the 23rd day of September, 2015, enclosed as follows:

Mr. Sterling Harmon
Assistant District Attorney
219 N. 6th St., Suite 200
Waco, Texas 76701

Mr. Gabe Price
Assistant District Attorney
219 N. 6th St., Suite 200
Waco, Texas 76701

State Prosecuting Attorney
P.O. Box 12405
Austin, Texas 78711

/s/ John A. Kuchera
John A. Kuchera, Attorney for Petitioner
Yalanda Renee Lind

## Certificate of Compliance with Rule 9.4

1. This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i) because the brief contains 4,243 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2. This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) and the type style requirements of Tex. R. App. P. 9.4(e) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman, size 14 font.

/s/ John A. Kuchera

John A. Kuchera

Attorney for: Yalanda Renee Lind

Dated: September 23, 2015

# Appendix A

2015 WL 4507672
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

DO NOT PUBLISH
Court of Appeals of Texas,
Waco.

Yalanda Renee Lind, Appellant

v.

The State of Texas, Appellee

No. 10– 14– 00201– CR |
Opinion delivered and filed July 23, 2015

**From the 54th District Court, McLennan County, Texas
Trial Court No. 2012–1147–C2**

**Attorneys and Law Firms**

John A. Kuchera, for Yalanda Renee Lind.

Abel Reyna, Sterling A. Harmon, Gabriel Price, for The State
of Texas.

Before Chief Justice Gray, Justice Davis, and Justice
Scoggins

**MEMORANDUM OPINION**

AL SCOGGINS, Justice

**\*1** The jury convicted Yalanda Lind of the offense of capital
murder and the offense of aggravated assault. The trial court
assessed punishment at life in prison without the possibility
for parole for the capital murder conviction, and the trial
court assessed punishment at twenty years confinement for
the aggravated assault conviction. We affirm.

**Sufficiency of the Evidence**

In the first issue, Lind complains that the evidence is
insufficient to support her conviction for capital murder.
In the second issue, Lind argues that because there was
no evidence she attempted to rob the victims, she was
only guilty of murder. In the fourth issue, Lind complains

that the evidence is insufficient to support her conviction
for aggravated assault. The Court of Criminal Appeals has
expressed our standard of review of a sufficiency issue as
follows:

> In determining whether the evidence is legally sufficient
> to support a conviction, a reviewing court must consider
> all of the evidence in the light most favorable to the
> verdict and determine whether, based on that evidence
> and reasonable inferences therefrom, a rational fact finder
> could have found the essential elements of the crime
> beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S.
> 307, 318–19 (1979); *Hooper v. State,* 214 S.W.3d 9,
> 13(Tex.Crim.App.2007). This "familiar standard gives full
> play to the responsibility of the trier of fact fairly to resolve
> conflicts in the testimony, to weigh the evidence, and to
> draw reasonable inferences from basic facts to ultimate
> facts." *Jackson,* 443 U.S. at 319. "Each fact need not point
> directly and independently to the guilt of the appellant,
> as long as the cumulative force of all the incriminating
> circumstances is sufficient to support the conviction."
> *Hooper,* 214 S.W.3d at 13.

*Lucio v. State,* 351 S.W.3d 878, 894 (Tex.Crim.App.2011),
*cert den'd,* 132 S.Ct. 2712, 183 L.Ed.2d 71 (2012).

The Court of Criminal Appeals has also explained that
our review of "all of the evidence" includes evidence that
was properly and improperly admitted. *Conner v. State,*
67 S.W.3d 192, 197 (Tex.Crim.App.2001). And if the
record supports conflicting inferences, we must presume
that the factfinder resolved the conflicts in favor of
the prosecution and therefore defer to that determination.
*Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979). Further, direct and circumstantial
evidence are treated equally: "Circumstantial evidence is as
probative as direct evidence in establishing the guilt of an
actor, and circumstantial evidence alone can be sufficient
to establish guilt." *Hooper v. State,* 214 S.W.3d 9, 13
(Tex.Crim.App.2007). Finally, it is well established that the
factfinder is entitled to judge the credibility of witnesses and
can choose to believe all, some, or none of the testimony
presented by the parties. *Chambers v. State,* 805 S.W.2d 459,
461 (Tex.Crim.App.1991).

Yalanda Lind lived with her mother, Rebecca Leonard, and
her mother's boyfriend, Jerry Patterson. Rebecca and Jerry
told Yalanda that she needed to move out of their home
by November 1, 2008. Yalanda was in a relationship with
Jeremy Lowrey during the time she lived with her mother.

Yalanda testified that the she ended the relationship with Jeremy around September 27, 2008.

*2 During the early morning hours of October 13, 2008, Rebecca and Jerry were asleep in their bed when Rebecca got up from their bed and told Jerry she was going to check on Yalanda. Jerry testified that Rebecca walked toward the hallway and called, "Yalanda." Jerry stated that when Rebecca got to Yalanda's room, Rebecca screamed "Yalanda," as if something scared her. Jerry said that Rebecca then screamed a "death scream." When Jerry got to Rebecca, she had been stabbed in her lungs and was lying on the floor. Jerry did not see Yalanda with her mother.

Jerry testified that he was then hit from behind, and it knocked him into the wall. A man with a mask came and stabbed Jerry in the chest. Jerry struggled with the man and received multiple stab wounds. Jerry testified that Yalanda never came to help him during the attack. The man eventually left Jerry, but returned when Jerry tried to go for the knife. Jerry was stabbed again, and he told the man "don't kill me." The man again left Jerry bleeding heavily, and Jerry decided to try to leave the house.

Jerry testified that he went through the hallway to go out the door, and he saw Yalanda in the kitchen sitting in front of the stove talking to the man who attacked him. Jerry said that the man asked Yalanda, "where is the money" and Yalanda responded "there's not any money." Jerry escaped to a neighbor's house, and asked his neighbor to call 9–1–1. Jerry had numerous stab wounds, and was in the hospital for several weeks to recover from his injuries.

When officers arrived at the scene, Yalanda told them that Jeremy was the attacker, and she gave a description of Jeremy. Officers were able to locate Jeremy and take him into custody. Officers who arrived at the scene testified that there was blood everywhere in the residence. Yalanda led the officers to the hallway where Rebecca was lying on the floor. Sergeant Jason Lundquist performed CPR on Rebecca until medical personal arrived at the scene, but Rebecca died from her injuries. Officers testified that there was no sign of forced entry at the residence and that Yalanda did not have any visible injuries.

Yalanda testified at trial that on the night of October 12, 2008, she was asleep in her room, and she heard the dog bark. Yalanda woke up and saw a person at the end of her bed. Yalanda said that the person jumped on top of her and put a cushion over her face. Yalanda struggled with the person,

and threw him off of her. Yalanda said that the attacker was wearing a mask at that time. Yalanda continued to fight and struggle with the attacker. Yalanda screamed for help, and she heard her mother call her name. The attacker got off of Yalanda and went to Rebecca. Yalanda was able to get up, and she saw the attacker on top of her mother. Yalanda screamed for Jerry to come help. The attacker then got off of Rebecca and went in Jerry and Rebecca's bedroom.

Yalanda looked into the bedroom and saw the person attacking Jerry. She jumped on the attacker's back and hit him, but she could not budge the attacker. She left the bedroom to go get a phone to call 9–1–1 for help. Yalanda testified that she called 9–1–1 from the kitchen. The attacker then came into the kitchen and slammed Yalanda into the counter and kicked her. Yalanda grabbed the mask and saw that Jeremy was the attacker. Yalanda stated that Jeremy then hit her head into the stove. Jerry then came through bleeding heavily. Jerry was trying to get out of the door, and Jeremy chased him. Yalanda testified that Jeremy screamed "where is the money" and Jerry said, "we ain't got none." Yalanda then began calmly telling Jeremy they did not have any money in an effort to distract him so that Jerry could leave. Jerry was able to leave the house, and Jeremy then ran out of the house. Yalanda went to her mother who was bleeding heavily and not responding. When the police arrived, Yalanda told them that Jeremy was the attacker.

*3 As alleged in the indictment, a person commits the offense of capital murder if the person commits murder as defined under Section 19.02(b)(1) and the person intentionally commits the murder in the course of committing or attempting to commit ... robbery. TEX. PENAL CODE ANN. 19.03(a)(2) (West Supp.2014). A person commits the offense of robbery if in the course of committing theft, and with the intent to obtain or maintain control of the property, a defendant knowingly or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a) (West 2011). A person commits the offense of aggravated assault if the person intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. 22.02(a)(2) (West 2011).

The charge instructed the jury on the law of parties.

Section 7.01 of the Texas Penal Code provides:

(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

(b) Each party to an offense may be charged with commission of the offense.

(c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

TEX. PENAL CODE ANN. § 7.01 (West 2011). A person is criminally responsible for an offense committed by the conduct of another if:

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PENAL CODE ANN. § 7.02(a) (West 2011).

In determining whether an individual is a party to an offense, the court may look to events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant that show an understanding and common design to do the prohibited act. *Cordova v. State,* 698 S.W.2d 107, 111 (Tex.Crim.App.1985). The jury is permitted to draw multiple reasonable inferences from the evidence presented as long as each is supported by the record. *Hooper v. State,* 214 S.W.3d 9, 15 (Tex.Crim.App.2007).

Jerry testified that the doors and windows were locked on the night of the murder and that neither he nor Rebecca unlocked the doors or windows that night. There was testimony from police officers that there was no evidence of a forced entry into the home. The jury could reasonably infer that Yalanda allowed Jeremy into the house on the night of the murder.

Jerry testified that after he and Rebecca were attacked, Yalanda and Jeremy were calmly discussing money in the kitchen. Jerry did not see any altercation between Jeremy and Rebecca. There was also evidence that Yalanda did not suffer any visible injuries on the night of the offense.

Debra McCall testified that Jerry is her husband's uncle. They received a call after the offense to come to the hospital. Debra testified that she saw Yalanda at the hospital on October 13. Yalanda told Debra that Jeremy had committed the offenses. Yalanda further told Debra, "he killed the wrong one." Debra stated that Yalanda did not seem worried about her mother, but rather was more concerned about items in the house and the worth of those items. Debra testified that she assisted in cleaning the house after the offenses. Debra and Charlene Kirby, the executor of Rebecca's will, found cash hidden in the house.

*4 There was evidence that Yalanda owed Rebecca money. Rebecca kept a ledger recording the amount of money owed to her by Yalanda. Jerry and Rebecca told Yalanda that she would have to move out of the house, and Yalanda testified that she did not have enough money to be able to pay her bills.

The evidence shows, and Yalanda concedes in her brief, that Jeremy had intent to commit theft, and that he caused bodily injury to another. There was testimony that the house was locked and there were no signs of forced entry. Jerry testified that Yalanda was calm when she was talking to Jeremy after the attack and that she was not fighting him or trying to escape. In a circumstantial evidence case, it is unnecessary for every fact to point directly and independently to the guilt of the accused; rather, it is enough if the finding of guilt is warranted by the cumulative force of all the incriminating evidence. *Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993). Viewing all of the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found that Yalanda acted with intent to promote or assist the commission of the offenses and aided in committing the offenses of capital murder and aggravated assault. We overrule Yalanda's first and fourth issues on appeal. Because of our disposition of the first issue, we need not address Yalanda's second issue. TEX.R.APP. 47.1.

## Jury Charge

In the third issue, Yalanda argues that the trial court erred "in submitting a party application paragraph in the capital

murder portion of the jury charge that did not require a finding that [she] intended to assist in both offenses—murder and robbery—thereby allowing for a nonunanimous verdict." Appellate review of alleged jury-charge error involves a two-step process. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App.1994). Initially, the court must determine whether error actually exists in the charge. If error is found, the court must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32. If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State,* 376 S.W.3d 767, 775 (Tex.Crim.App.2012); *Arline v. State,* 721 S.W.2d 348, 352 (Tex.Crim.App.1986). Yalanda did not object to the application paragraph of the charge.

The application paragraph in the capital murder portion of the charge instructed the jury as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the Defendant, Yalanda Renee Lind, on or about the 13th day of October, 2008, in the County of Mclennan and State of Texas, as alleged in Count I of the indictment, did then and there intentionally cause the death of an individual, namely, Rebecca Leonard, by stabbing and cutting Rebecca Leonard with a knife, and the Defendant was then and there in the course of committing or attempting to commit the offense of Robbery of Rebecca Leonard or Jerry Patterson, then you will find the Defendant guilty of the offense of Capital Murder, as alleged in Count I of the indictment and so say by your verdict;

> *5 Or, if you believe from the evidence beyond a reasonable doubt that someone other than Yalanda Renee Lind, on or about the 13th day of October, 2008, in the County of Mclennan and State of Texas; did then and there intentionally cause the death of an individual, namely, Rebecca Leonard, by stabbing and cutting Rebecca Leonard with a knife, and someone other

than the Defendant was then and there in the course of committing or attempting to commit the offense of Robbery of Rebecca Leonard or Jerry Patterson, and you further find and believe beyond a reasonable doubt that Yalanda Renee Lind, acting with intent to promote or assist another person to commit said offense, solicited, encouraged, directed, aided, or attempted to aid another person to commit said offense, then you will find the Defendant guilty of the offense of Capital Murder, as alleged in Count I of the indictment in the same manner as if you found that the offense was committed by the Defendant's own conduct, and so say by your verdict.

In *Holford v. State,* 177 S.W.3d 454, (Tex.App.-Houston [1 Dist.] 2005, pet. ref'd), the court considered similar language used in a charge on the law of parties in a capital murder case. In *Holford,* the charge also included language instructing the jury that if they found someone other than the defendant did then and there unlawfully, while in the course of committing or attempting to commit the robbery of the victim, intentionally cause the death of the victim by cutting the victim with a deadly weapon, namely, a knife, and that the defendant, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid another person to commit the offense, then they will find the defendant guilty of capital murder. *Holford v. State,* 177 S.W.3d at 460.

The defendant in *Holford* argued that the charge permitted the jury to convict him as a party to capital murder if he intended to aid in only one offense rather than in both offenses. *Holford v. State,* 177 S.W.3d at 460. In *Holford,* the Court noted that the charge describes the capital murder as necessarily occurring "while in the course of committing or attempting to commit the robbery." *Holford v. State,* 177 S.W.3d at 461. The Court did not find that the charge was erroneous. We agree. We overrule Yalanda's third issue.

### Conclusion

We affirm the trial court's judgment.

### All Citations

Not Reported in S.W.3d, 2015 WL 4507672

---

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Appendix B



DEFENDANT'S
EXHIBIT

DEFENDANT'S EXHIBIT NUMBER 2



DEFENDANT'S
EXHIBIT

DEFENDANT'S EXHIBIT NUMBER 3


DEFENDANT'S
EXHIBIT
3
PENGAD-Bayonne, N. J.

DEFENDANT'S EXHIBIT NUMBER 4


DEFENDANT'S
EXHIBIT

DEFENDANT'S EXHIBIT NUMBER 5



DEFENDANT'S
EXHIBIT
PENGAD-Bayonne, N. J.

DEFENDANT'S EXHIBIT NUMBER 6



**DEFENDANT'S EXHIBIT**

6

PENGAD-Bayonne, N. J.

DEFENDANT'S EXHIBIT NUMBER 7



DEFENDANT'S
EXHIBIT
1